UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SUPER FUTURE EQUITIES, INC.,        §
                                    §
        Plaintiff,                  §
                                    §
V.                                  §
                                    §
WELLS FARGO BANK MINNESOTA,         §     CIVIL ACTION NO. 3: 06-CV-0271-B
N.A.; ORIX CAPITAL MARKETS,         §
LLC; ORIX CAPITAL MARKETS           §
PARTNERSHIP; JOHN DINAN;            §
MICHAEL F. WURST; CLIFFORD          §
WEINER; JAMES R. THOMPSON;          §
and ORIX USA CORPORATION,           §
                                    §
        Defendants.                 §

MEMORANDUM ORDER

Super Future Equities, Inc. ("SFE") filed this action against Wells Fargo Bank Minnesota,

N.A. ("Wells Fargo"); ORIX Capital Markets, LLC ("Orix" or "Orix Capital"); ORIX USA

Corporation ("Orix USA"); John Dinan; Michael F. Wurst; Clifford Weiner; James R. Thompson;

and ORIX Capital Markets Partnership ("Orix Partnership")[1], claiming breach of fiduciary duty,

negligence, gross negligence, breach of contract, and civil violations of Racketeer Influenced and

Corrupt Organizations Act ("RICO").[2] Presently before the Court is Defendant Wells Fargo Bank,

N.A.'s Motion for Summary Judgment (doc. 314); Orix Defendants' Motion for Summary Judgment

---

[1] On August 2, 2007, the Court dismissed Orix Capital Markets Partnership from the case pursuant to Federal Rule of Civil Procedure 4(m) (doc. 309).

[2] The Court will use the following designations for the Defendants: (1) "Orix Defendants" includes Orix, Orix USA, Dinan, Wurst, Weiner, and Thompson; (2) "Defendants" includes the Orix Defendants and Wells Fargo; (3) "Individual Defendants" includes Dinan, Wurst, Weiner, and Thompson.

1

(doc. 318); Defendant Wells Fargo's Motion to Strike Certain of Plaintiff's Summary Judgment Evidence (doc. 438); and Orix Defendants' Objections and Motions to Strike Plaintiff's Evidence in Support of Its Response to the Orix Defendants' Motion for Summary Judgment (doc. 448). For the reasons that follow, the Court **GRANTS** the Defendants' motions to strike Plaintiff's evidence to the extent that they request the exclusion of the portion of Thomas Arjmandi's declaration attempting to value the certificates; the motions to strike other evidence are **DENIED as Moot.** The Court also **GRANTS** the Defendants' motions for summary judgment on all of SFE's claims.

## I. Background

This case involves the world of Commercial Mortgage Backed Securities ("CMBS") transactions. In a traditional mortgage loan situation, the loans are serviced by the mortgage banker loan correspondents that originated the loans. Deborah O. McKinnon et al., *Standard Roles and Responsibilities of the Master and Sub-Servicers in CMBS Transactions* (Mortgage Bankers Association May, 2000). However, CMBS transactions differ in that servicing is provided by servicers who were not the originators of the loans. *Id.* Disputes about these servicing activities have spawned the controversy in this case.

In a CMBS transaction, a loan is funded and then sold to a special purpose, bankruptcy-remote entity, which the Court will refer to as a "trust." (Orix Defs.' Br. in Supp. of their Mot. for Summ. J. ("Orix's Br.") 4). These trusts purchase a number of loans to form a large, diversified pool of loans. (*Id.*). The purchase of these loans is funded by the proceeds from the issuance of certificates that are purchased by investors (known as "the certificate holders"). (*Id.*). A Pooling and Servicing Agreement ("PSA") sets out the procedures for administering the loans, establishes the priority for allocating the cash flow generated by the loans among the certificate holders, and divides

2

the responsibility for trust matters among: (1) the Master Servicer, (2) the Special Servicer, and (3) the Trustee. (*Id.*; Wells Fargo's Br. in Supp. of its Mot. For Summ. J. ("Wells Fargo's Br.") 6).

The *Master Servicer's* duties include collecting the loan payments and passing the funds to the Trustee, enforcing loan documents for untroubled loans, advancing late payments to the Trustee, and providing performance reports to the certificate holders. BAXTER DUNAWAY, 4L LAW OF DISTRESSED REAL ESTATE § 56.14 (2007); Wells Fargo's Br. 6; Pl.'s Br. in Resp. to Orix's Mot. for Summ. J. ("Pl.'s Resp. to Orix's MSJ") 1. The Master Servicer may transfer loans that are not being paid or do not comply with the loan documents to the *Special Servicer* who will work out the problems or foreclose on the loan. (Wells Fargo's Br. 6). This Special Servicer is selected by the holder of the lowest class of certificates, also known as the "Controlling Class." (*Id.*). The *Trustee's* duties include holding the mortgage collateral, distributing funds collected by the Master Servicer to the certificate holders, supervising the Master Servicer and Special Servicer, ensuring that the servicers comply with the PSA, and appointing new servicers if the PSA is violated. BAXTER DUNAWAY, 4L LAW OF DISTRESSED REAL ESTATE § 56.14 (2007).

The trust issues different classes or "tranches" of certificates with each class having a different level of risk. Under the PSA's, senior grade or Class A certificate holders take on the lowest amount of risk because they receive payments of principal and interest before the other classes, but they are sold at a higher price and receive less interest on their investment. (Orix's Br. 4; Wells Fargo's Br. 8; Pl.'s Second Am. Compl. ("SAC") ¶ 18). Lower classes of certificate holders or B-Piece or first loss certificate holders bear more risk because they receive payments from borrowers only after all other certificate holders are paid but also have a higher expected yield. (Orix's Br. 4; Wells Fargo's Br. 8, SAC ¶ 18). Under this system, the Servicers collect monthly principal and interest payments from

3

the borrowers on the loans in the trust. (Wells Fargo's Br. 8). From these payments, the Servicers withhold expenses for servicer fees, litigation expenses, and advance reimbursements and then transfer the rest to the Trustee. (*Id.*). The Trustee will first distribute interest to Class A certificate holders and, if there is money remaining, will then distribute interest to Class A-2 certificate holders. (*Id.*). If funds still remain, the Trustee will distribute to Class B certificate holders and so on. (*Id.*). If the money runs out, lower classes of certificate holders do not receive interest payments that month. (*Id.*). The Trustee distributes principal in a similar manner, but the more senior grade certificate holder must be paid all of its principal before the certificate holder at the lower level receives any principal. (*Id.*).

This lawsuit arises out of the relationship between a certificate holder and the Servicer, Special Servicer, and Trustee of two CMBS trusts: (1) the Trust for the Certificate holders of the Merrill Lynch Mortgage Investors, Inc. Mortgage Pass-Through Certificates, Series 1999-C1 ("MLMI Trust") and (2) the Trust for the Certificate holders of the First Union-Lehman Brothers-Bank of America Commercial Mortgage Pass-Through Certificate Series 1998-C2 ("FULBBA Trust") (collectively "the Trusts"). SFE purchased Class B Certificates in the MLMI Trust on April 7, 2005 and Class A-2 Certificates in the FULBBA Trust on July 28, 2005 (SAC ¶¶ 77, 139).[3] After purchasing the master servicing rights (in October 1998) and special servicing rights (in June 2000) in the FULBBA Trust, Orix Capital became the Master and Special Servicer of the Trust as well as a

---

[3]Both Wells Fargo and Orix point out that Orix foreclosed on a Louisiana apartment building which served as collateral for a loan that was sold into the MLMI Trust. (Wells Fargo's Br. 5). This apartment building was owned by Cyrus II Partnership. (*Id.*). Bahar Development, of which Mondona Rafizadeh was President, was the general partner of Cyrus II. (*Id.*).This foreclosure resulted in a $10 million judgment against Mondona Rafizadeh, among others. (*Id.*). Approximately three months later, SFE, which was incorporated by Mondona Rafizadeh's husband and is managed by her son and nephews, purchased certificates in the MLMI

holder of first loss certificates.  (Orix's Br. 6).  When the MLMI Trust was established in November 1999, Orix Capital was named the Master and Special Servicer and also held first loss certificates in the Trust.  (*Id.*).  The individual Defendants are all officers, directors, or employees of Orix Capital. (SAC ¶ 31).  Orix USA is allegedly interrelated with Orix Capital and the individual Defendants. (SAC ¶¶ 31, 38). Wells Fargo is the Trustee for both of the Trusts.  (Pl.'s Response to Orix's MSJ 1).

SFE accuses the Orix Defendants of numerous misdeeds stemming from these servicing relationships, including:

- "Manufactur[ing] defaults of performing loans in order to charge unnecessary servicing fees and advances to the Trusts;

- Pursu[ing] unnecessary litigation against borrowers and guarantors of loans in a manner that depletes the Trusts' assets and benefits only ORIX at the expense of the certificate-holders;

- Bring[ing] disingenuous, unnecessary, and non-beneficial litigation – funded out of the Trusts – against the entities that deposited the loans into the Trusts in order to generate fees paid by litigation advances and reimbursements from the Trusts and wrongfully retain[ing] the proceeds of settlement of such litigation;

- Mak[ing] inaccurate reports to the Trustee and certificate-holders, including false reporting and allocation of its fees and litigation expenses, in an effort to hide its wrongful activities from SFE and other certificate-holders; and

Trust. (*Id.*). Three months after that, SFE purchased certificates in the FULBBA Trust.  (*Id.*).

5

- Operat[ing] the Trusts to inflate the value of the inferior 'lower tranch' certificates held by it and extend[ing] their life, in order to sell the certificates at a huge profit, while leaving the Trusts in such poor condition that other certificate-holders will certainly suffer huge losses in their investments."

(Pl.'s Resp. to Orix's MSJ 2).

With respect to Wells Fargo, SFE alleges the following conduct:

- "Execut[ing] ill-advised powers of attorney authorizing Orix to act as Wells Fargo's agent and attorney-in-fact in connection with the Trusts;

- Look[ing] the other way – in violation of fiduciary duties owed to SFE – as ORIX violated duties owed to the Trusts and the certificate-holders;

- Obtain[ing] financial benefits at the expense of the certificate-holders of both Trusts while failing to fulfill its duties; and

- Knowingly distribut[ing] false and fraudulent data to the certificate-holders regarding the Trusts."

(Pl.'s Br. in Resp. to Wells Fargo's Mot. for Summ. J. ("Pl.'s Resp. to Wells Fargo's MSJ") 1-2).

Based on these allegations, on February 13, 2006, SFE filed its Original Complaint – Class Action (doc. 1) claiming breach of fiduciary duty, breach of contract, and RICO violations against Wells Fargo, Orix Capital, Orix Partnership, Orix USA, and the individual Defendants. On April 10, 2006, SFE filed its First Amended Complaint – Class Action (doc. 5), adding claims of negligence and gross negligence. After Defendants filed two separate motions to dismiss, SFE was granted leave to file an amended complaint and filed its Second Amended Complaint – Class Action on June 26, 2006. The Court struck SFE's class allegations on August 28, 2006 for failure to timely

file a motion for class certification and ordered SFE to file an amended complaint removing its class allegations. SFE thereafter filed its fourth complaint, styled Plaintiff's Second Amended Complaint, which is the live complaint, on September 11, 2006.

On August 3, 2007, Wells Fargo filed the instant motion for summary judgment (doc. 314) arguing that: (1) SFE lacks Article III standing to bring this suit because it has no damages; (2) SFE has no evidence of racketeering activity by Wells Fargo; (3) SFE cannot establish a breach of fiduciary duty by Wells Fargo; (4) SFE has no evidence to support a negligence or gross negligence claim against Wells Fargo; and (5) the PSA's relieve Wells Fargo of liability for SFE's claims. (Wells Fargo's Br. In Supp. of its Mot. for Summ. J. ("Wells Fargo's Br.")). The Orix Defendants also moved for summary judgment (doc. 318)  based on the following: (1) SFE cannot show demonstrable damage; (2) SFE lacks standing to assert claims on behalf of the trusts making summary judgment appropriate on all of its inherently derivative claims; (3) the individual Defendants cannot be liable for alleged breaches of the PSA's; (4) there is no evidence that the individual Defendants committed any tortious acts; (5) there is no evidence that Orix USA is liable for any of SFE's claims including breach of the PSA's or the alleged torts; (6) SFE's claims against the Orix Defendants are barred by the "no-action clause" in the PSA's; (7) SFE is bound by the waivers and disclaimers of liability in the PSA's; (8) summary judgment is appropriate on SFE's RICO claims under both the "No-Evidence" motion for summary judgment and traditional motion for summary judgment standards; (9) any claim for negligence or gross negligence is impermissibly duplicative of the alleged contract claim; and (10) any claim for breach of fiduciary duty is impermissibly duplicative of the alleged contract claim.  (Orix 's Br.). SFE responded to these motions for summary judgment on August 23, 2007 (docs. 388, 390).  On September 7, 2007, Wells Fargo filed its Motion to Strike Certain of

7

Plaintiff's Summary Judgment Evidence (doc. 438), and Orix filed Objections and Motion to Strike Plaintiff's Evidence in Support of Its Response to the Orix Defendants' Motion for Summary Judgment (doc. 448). Wells Fargo and Orix filed their summary judgment replies on September 7, 2007 (docs. 450, 454). Both motions for summary judgment, being fully briefed, are now ripe for adjudication. Despite all of these allegations and arguments, these motions for summary judgment boil down to: (1) the admissibility of the evidence SFE submitted in response to the motions for summary judgment, (2) the choice of law for SFE's causes of actions; (3) whether SFE has presented sufficient evidence of injury and causation to establish Article III standing; and (4) whether SFE has presented sufficient evidence of damages to support each of its causes of action.

## II.   Orix and Wells Fargo's Motions to Strike Thomas Arjmandi's Declaration

As a prelude to reviewing the motions for summary judgment, the Court will address the Defendants' arguments that SFE's summary judgment evidence is inadmissible. When determining the admissibility of evidence on a motion for summary judgment, courts generally apply the same standards and rules that govern the admissibility of evidence at trial. *Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 650 n.3 (5th Cir. 1992) (citing *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 175-76 (5th Cir. 1990), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 n.14 (5th Cir. 1994)). Orix contends that the declaration of Thomas Arjmandi ("Arjmandi"), SFE's corporate representative and president, is inadmissible because it contradicts his former deposition testimony that he could not quantify SFE's damages.[4] (Orix Reply

---

[4]While the Court has not relied on these arguments, Wells Fargo contends that Arjmandi is incompetent to testify because he is neither an expert nor an owner of the certificates. (Wells Fargo's Reply 7). He also never represented that he was familiar with the market value of the certificates, which Wells Fargo claims is a prerequisite to testimony by an owner. (*Id.*).

Br. 4).  Orix also claims that Arjmandi's Declaration is an "eleventh hour ambush" and that he is not

qualified to testify as an expert (Orix's Mot. to Strike 25-26 (citing *KW Plastics v. U.S. Can Co.*, 131

F. Supp. 2d 1289, 1295 (M.D. Ala. 2001)).  Similarly, Wells Fargo claims, in its motion to strike

SFE's summary judgment evidence, that Arjmandi's declaration contains inadmissible hearsay and

improper lay opinions and contradicts SFE's designated 30(b)(6) deposition testimony.  (Wells

Fargo's Mot. to Strike 4).

## A.  SFE's Evidence

The Court will first examine SFE's evidence and then analyze whether the evidence SFE

submitted in response to the motions for summary judgment is admissible.  In its initial disclosures,

SFE stated that it "has not yet made an exact calculation of any damages owing to it by the

Defendants."  (Wells Fargo App. 115, Orix App. 472).  SFE listed nine categories of damages,

placing monetary amounts on three of them. [5]  In its First Supplemental Rule 26 Disclosures, SFE

claimed its damages were the purchase price of the certificates of $165,000 or their diminishment in

---

[5]SFE listed the following categories of damages: "(a) Amounts overbilled to the MLMI and FULBBA Trusts, an amount in excess of $10 million, for improper litigation expenses.  (b) Amounts of improper fees, advancement reimbursements, and interest paid to Defendants in an amount to be discovered.  (c) The purchase price of the MLMI and FULBBA Certificates purchased by Plaintiff in an amount of approximately $164,700.  (d) All payments made to the ORIX Conspirator Defendants with respect to their 'B Pieces' after the date on which such certificates should have been 'junked' and to the extent the losses sustained by the FULBBA and MLMI Trusts exceeded the par value of the B Pieces investment, an amount to be discovered.  (e) The amount of profits the ORIX Conspirators gained through sale of the improperly inflated and continued 'B pieces,' an amount believed to be in excess of $20 million dollars.  (f) Any other gains realized from the breach of fiduciary obligations by Defendants, an amount to be discovered.  (g) Amounts lost to the Trust as a result of the performing loans which were foreclosed by ORIX with Wells Fargo's blessing, an amount to be discovered.  (h) Amounts gained by Defendants from improper foreclosure on performing loans or by reselling foreclosed properties to itself or entities with which Defendants had an affiliation, an amount to be discovered.  (i) The value of Wells Fargo's 'Master Servicing Right' assets attributable to its involvement with the MLMI and FULBBA Trusts, an amount to be discovered."  (Orix App. 473; similar list at Wells Fargo Sealed App. 11).

value of no less than $24,700.  (Orix App. 478; Wells Fargo App. 1432).  It also listed quantities for gains and fees earned by the Defendants.[6]  In its interrogatory responses, SFE claimed that the certificates were worthless and that SFE lost at least $164,700.  (Orix App. 485).  SFE objected to subsequent interrogatories requesting injuries for its causes of actions stating that the interrogatories were vague, ambiguous, overbroad, duplicative, requested a legal conclusion, and attempted to limit damages.  (Orix App.  489-92 ).  SFE referred to its responses to disclosures and expert testimony and stated that the Defendants have not provided information on this subject. (Orix App.  489-92 ). SFE stated that it is entitled to recover the purchase price of the certificates or their diminishment in value and the gains made by the Defendants.  (Orix App.  489-92 ).  When requested to detail the amount and method of calculating damages, SFE made similar objections and stated that it was entitled to the purchase price of the certificates of $165,000 or the lost market value of no less than $24,700.  (Orix App. 492-93).

In his July 12, 2007 deposition, less than a month before the Defendants filed their motions

---

[6]SFE listed the following categories of damages: "(a) Amounts of master servicing, special servicing, trustee, and other fees (such as modification fees, late charges, default interest, and defeasance fees), paid to Defendants in connection with their activities for the MLMI and FULBBA Trusts, an amount exceeding $29,355,497.  (b) Amounts of interest paid to Defendants on advances and expenses (including principal and interest advances, litigation advances, and custodial balances), an amount exceeding $1,865,814.  (c) The purchase price of the MLMI and FULBBA Certificates purchased by SFE, an amount of $165,000, or their diminution in value, an amount no less than $24,700.  (d) Distribution payments made to the ORIX Defendants with respect to their 'B Pieces,' an amount no less than $20,000,000.  (e) The amount of profits the ORIX Defendants gained through sale of their 'B pieces' in the MLMI and FULBBA Trust, an amount no less than $40,000,000.  (f) Amounts gained by Defendants from sale of collateral properties for liquidated loans not credited to the Trusts, an amount no less than $4,500,000. (g)  Any other gains or profits or benefits Defendants received in connection with their activities for the MLMI and FULBBA Trusts, such as diverting settlement amounts through non-Trust accounts or improper purchases of Trust assets.  (h) Any tax penalties suffered by SFE as a result of improper actions of the Defendants in connection with administering the Trusts. (i) The value of Wells Fargo's 'Mortgage Servicing Right' assets attributable to its involvement with the MLMI and FULBBA Trusts." (Orix App. 478; Wells Fargo App. 1432).

for summary judgment,   Arjmandi stated that he was not aware of any lapse in payment of interest

on the certificates and had not calculated any damages resulting from lack of interest payments.

(Orix App.  502-503).  The following  exchange also occurred:

> Q.  Has SFE been damaged because of its holdings in the MLMI and FULBBA
> certificates?  A.  I believe so, yes.  Q.  Can you quantify that damage?  A.
> Numerically?  Q. Yes.  A.  No, not as I sit here right now. . . . Q. No.  Do you plan on
> testifying at the trial of this case as to the value of the certificates.  A.  I don't know
> what the particular plans are at trial.  Q.  Do you have any reason to believe that you
> are qualified to opine as to the value of the certificates SFE holds in the MLMI and
> FULBBA trusts?  A.  Well, I do know that an expert has been retained, I believe,
> whose testimony will be on the damages to the certificates by the underlying
> activities of the servicer and the trustee.  Q.  That is Victor Moore?  A. Correct.  Q.
> So you believe Victor Moore will testify or attempt to value SFE's certificates, is that
> your understanding?  A.  And the damages therein, I believe so.

(Orix. App. 502-04).  On July 30, 2007, Victor Moore testified that he had no opinion on damages

and whether the Defendants' actions caused damages to SFE, that he was not asked to look at

damages,  and that he could not quantify the value of the certificates.  (Orix App. 512-514, 517).

SFE's expert Eli Clark stated that he believed SFE suffered financial harm stating that:

> to the degree that they have received interest payments on time but those interest
> payments have come at a cost, I think that would harm their interest in the long-
> term.   And then you have . . . a separate question as to whether or not–the
> underlying bonds and earned certificates have also been diminished in value.

(Orix App. 526).  Clark stated that he would not testify regarding the value of SFE's certificates and

that this was outside of his legal expertise.  (Orix App 526-27).

On August 23, 2007, in its response to Wells Fargo's motion for summary judgment, SFE

submitted a declaration of Thomas Arjmandi, also dated August 23, 2007, reciting the purchase

price of the certificates and stating that the Charles Schwab account statements he obtained from

the online account reflect a decline of $25,464.  (SFE App. 1570-75).  In his declaration, Arjmandi

11

also stated,

> Further, based on my familiarity  with these investments and my review of their performance, coupled with the knowledge that I have gained regarding the manner in which the MLMI and FULBBA Trusts have been managed by the ORIX Defendants and Wells Fargo, it is my assessment that these certificates have been significantly diminished below the stated market price – if not rendered valueless –because I cannot now in good faith sell the certificates to a new buyer in light of the knowledge I have regarding past and present actions of Defendants.  Specifically, I would have to fully disclose the Defendants' violations of duties owed to SFE and other certificate-holders which threaten the investments and will likely result in losses to future holders.

(SFE App. 1572).  In addition, SFE cites authority for the proposition that an owner of property or a business may testify regarding damages to the property.  (Pl.'s Resp. to Wells Fargo's MSJ 9-11).

**B.    Analysis**

Federal Rule of Civil Procedure 26(a)(1)(C) requires disclosure of "a computation of any category of damages claimed by the disclosing party. . ."  Rule 37(c)(1) provides that a party who "without substantial justification" fails to disclose information required by Rule 26(a) "is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed . . ."  Interpreting these rules, *Design Strategies*, held that the plaintiff had "not provided sufficient discovery regarding the amount of or basis for calculating damages based on alleged lost profits" and could not provide evidence of lost profits at trial.  *Design Strategies, Inc. v. Davis*, 367 F. Supp. 2d 630, 633, 636 (S.D.N.Y. 2005).  The plaintiff's disclosed financial statements did not provide a method for calculating the profits that it would have earned if it had been awarded the contract.  *Id.* at 635.  The court reasoned:

> While the financial statements may indicate Design's standard profit margin, they do not provide any basis on which to calculate the specific sum of money that the Contentville Project would have generated had it been awarded to Design, nor the percent of that sum that Design would retain.

12

*Id.* In *Szusterman*, the Court excluded evidence of damages because the plaintiff had not furnished the methodology for calculating damages and had stated in his deposition that he did not know how he calculated the figure. *Szusterman v. Amoco Oil Co.*, 112 Fed. Appx. 130, 131-32 (3rd Cir. 2004). Similarly, in *KW Plastics*, the Court excluded the expert's unjust enrichment calculations as violations of Rule 26(a)(2)(B) because he did not seek to quantify this type of damages in his earlier reports or pleadings:

> To allow McGowan to testify as to *unjust enrichment*, when he has never shown any prior inclination for doing so, would reward U.S. Can for its misdeeds and countenance an end-run around the Federal Rules of Civil Procedure and the orders of the court. Such litigation tactics, which are neither justified nor harmless, cannot stand.

131 F. Supp. 2d at 1295-96.

While *KW Plastics*, *Design Strategies*, and *Szusterman* involved exclusion of evidence at trial, Rule 37(c)(1) has been applied to exclude an expert affidavit filed in response to a motion for summary judgment because it was untimely. *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1006 (8th Cir. 1998); *see also Brainard v. Am. Skandia Life Assurance Corp.*, 432 F.3d 655, 664 (6th Cir. 2005) (excluding an expert affidavit submitted in response to a motion for summary judgment because it was substantially different from the expert report). In *Trost*, the Court reasoned that the defendant had prepared its motion for summary judgment, in part, based on the lack of expert evidence to support the plaintiff's claims and that the defendant would be prejudiced because of lack of time to refute the evidence at trial. *Id.* at 1008-09. Finally in *Omaha Public*, the Court excluded an affidavit in response to a motion for summary judgment because the opinion had not been previously disclosed, the plaintiff did not present

13

an explanation for the lateness, the defendant would be prejudiced because trial was less than three months away, and the defendant had moved for summary judgment because there was no expert testimony. *Omaha Pub. Power Dist. v. Siemens Aktiengesellschaft*, 2002 WL 826830, at *3-*5 (D. Neb. 2002).

In this case, Rule 37(c)(1) should preclude this Court from considering Arjmandi's affidavit. Like the plaintiffs in *Szusterman* and *KW Plastics*, Arjmandi did not purport to quantify SFE's damages in his deposition and indicated that he could not do so. Furthermore, as in *Design Strategies*, SFE has not provided a method for calculating the value of the certificates. This failure to comply with the Rule 26(a)(1)(C) requirement of the disclosure of computations of damages should result in exclusion of the evidence unless the party has substantial justification or the failure was harmless. FED. R. CIV. P. 37(c)(1). SFE has not offered any justification,[7] and the Court finds that the Defendants would be harmed by the evidence because, like the defendants in *Trost* and *Omaha Public*, they relied on the lack of damages evidence in preparing their motions for summary judgment. Accordingly, the Court excludes Arjmandi's affidavit and will not consider it for purposes of this motion for summary judgment.

In addition to Rules 26(a)(1)(C) and 37(c)(1), Federal Rule of Civil Procedure 30(b)(6) also supports exclusion of Arjmandi's affidavit. Rule 30(b)(6) provides:

> A party may in the party's notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers,

---

[7]SFE did not file a response to Orix or Wells Fargo's motion to strike evidence.

directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. . . The persons so designated shall testify as to matters known or reasonably available to the organization . . .

FED. R. CIV. P. 30(b)(6).  Federal courts have interpreted this rule as prohibiting a 30(b)(6) representative from disclaiming the corporation's knowledge of a subject at the deposition and later introducing evidence on that subject.  *See Ierardi v. Lorillard, Inc.*, 1991 WL 158911, at *3 (E.D. Pa. 1991).

For example, in *Rainey*, the defendant's 30(b)(6) corporate representative stated that he did not know whether he knew what percentage of the plaintiff's time was spent on exempt functions.  *Rainey v. Am. Forest & Paper Ass'n, Inc.*, 26 F. Supp. 2d 82, 92 (D.D.C. 1998).  In response to the plaintiff's motion for summary judgment, the defendant filed an affidavit of a former employee quantifying the plaintiff's work. *Id.* at 93-94.  The Court excluded this affidavit reasoning that Rule 30(b)(6) required the defendant to prepare its designee to give binding answers. *Id.* at 94.  Unless it can prove that the information was not known or was inaccessible, a corporation cannot later proffer new or different allegations that could have been made at the time of the 30(b)(6) deposition. *Id.* (citing *Ierardi*, 1991 WL 158911, at *3).  Rule 30(b)(6) "aims to prevent a corporate defendant from thwarting inquiries during discovery, then staging an ambush during a later phase of the case." *Id.* at 95; *see also United States v. J.M. Taylor*, 166 F.R.D. 356, 362 (M.D.N.C. 1996) ("[I]f a party states it has no knowledge or position as to a set of alleged facts or area of inquiry at a Rule 30(b)(6) deposition, it cannot argue for a contrary position at trial without introducing evidence explaining the reasons for the change"); *Ierardi*, 1991 WL 158911, at *3  ("Under Rule

15

30(b)(6), defendant has an obligation to prepare its designee to be able to give binding answers on behalf of H & V. If the designee testifies that H & V does not know the answer to plaintiffs' questions, H & V will not be allowed effectively to change its answer by introducing evidence during trial. The very purpose of discovery is 'to avoid 'trial by ambush.''") (quoting *Fed. Deposit Ins. Corp. v. Butcher*, 116 F.R.D. 196, 201 (E.D. Tenn. 1986)).

In his July 12, 2007 deposition, Arjmandi stated that as he sat there he could not quantify the plaintiff's damages. When asked if he was qualified as an expert to testify, he responded that he believed SFE would have an expert to testify. In response to the Defendants' motions for summary judgment, Arjmandi filed a declaration purporting to quantify the damages. Because Arjmandi previously testified that he could not quantify the damages and has not offered an explanation for his change in position, his affidavit should be excluded under Rule 30(b)(6). Accordingly, Orix and Wells Fargo's motions to strike the portion of Arjmandi's declaration placing a value on the certificates are **GRANTED.** Having determined that Arjmandi's declaration should be excluded, the Court now turns to the motions for summary judgment.[8]

### III.  Wells Fargo and Orix's Motions for Summary Judgment

### A.  Summary Judgment Legal Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075

---

[8]The Court need not consider the Defendants' other motions to exclude SFE's evidence because it finds in favor of the Defendants on all of SFE's claims.

(5th Cir. 1994). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes about material facts will preclude the granting of summary judgment. *Id.*

The burden is on the summary judgment movant to prove that no genuine issue of material fact exists. *Latimer v. SmithKline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990). If the non-movant bears the burden of proof at trial, the summary judgment movant need not support its motion with evidence negating the non-movant's case. Rather, the movant may satisfy its burden by pointing to the absence of evidence to support the non-movant's case. *Id.*; *Little*, 37 F.3d at 1075.

Once the movant has met its burden, the non-movant must show that summary judgment is not appropriate. *Little*, 37 F.3d at 1075 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "This burden is not satisfied with 'some metaphysical doubt as to material facts,' . . . by 'conclusory allegations,' . . . by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The non-moving party must "come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita*, 475 U.S. at 587 (emphasis in original) (quoting FED. R. CIV. P. 56(e)). To determine whether a genuine issue exists for trial, the court must view all of the evidence in the light most favorable to the non-movant, and the evidence must be sufficient such that a reasonable jury could return a verdict for the non-movant. *Anderson*, 477 U.S. at 248; *Munoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000).

## B.     Choice of Law

Before turning to the merits of the motions for summary judgment, the Court must decide whether Texas or New York law governs SFE's state law causes of action. In deciding the

17

appropriate law to apply to the party's state-based claims, the Court applies the choice-of-law rules of

the forum state, here being Texas. *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 403 (5th Cir. 2004).

Absent a valid choice-of-law agreement, Texas courts apply the "most significant relationship" test

of the Restatement (Second) of Conflict of Laws. *Id.* The parties agree that federal law governs

SFE's RICO claims and New York law governs the breach of contract claims and defenses in this

case. The contract claims are based on the PSA's which contain a choice-of-law provision providing:

> This Agreement and the Certificates shall be construed in accordance with the
> internal laws of the State of New York applicable to agreements made and to be
> performed in said State, and the obligations, rights and remedies of the parties
> hereunder shall be determined in accordance with such laws without regard to
> conflicts of law principles.

(Orix's Supplemental Br. In Supp. of Their Mot. to Dismiss 5). Under Texas law, if the parties

have agreed to an enforceable choice of law clause, the court will apply the law of that state to

contract claims. *Resolution Trust Corp. v. Northpark Joint Venture*, 958 F.2d 1313, 1318 (5th Cir.

1992). Accordingly, the Court agrees with the parties that New York law governs the breach of

contract claims and federal law governs the RICO claims.

The parties, however, disagree about whether Texas or New York law governs the tort

claims. Wells Fargo argues that the PSA's' choice of law provision demonstrates that New York law

"has a significant relationship to the Trusts and the obligations created as a result of them." (Wells

Fargo's Br. 26 n.16). SFE's claims involve the trusts, and the trusts are centered in New York. (*Id.*).

New York is where the depositor for the MLMI Trust is located, where two-thirds of the mortgage

loan sellers are located, and where the financing occurred. (*Id.*). As for the FULBBA Trust, the

depositor is based in New York, and the mortgage loan sellers are either registered in New York or a

state other than Texas. (*Id.*). Also, the financing for that trust occurred in New York. (*Id.*). Wells

Fargo is not a Texas formed entity and its principal place of business is not Texas. (*Id.*). Wells Fargo also argues that SFE's location in Texas is not controlling. (*Id.* (citing *Jackson v. W. Telemarketing Corp. Outbound*, 245 F.3d 518, 523 (5th Cir. 2001)). Orix has argued that the negligence and gross negligence claims "will be governed by the choice-of-law provision because they depend upon an 'interpretation and enforcement' of the PSAs."[9] (Orix Supplemental Br. In Supp. of Their Mot. to Dismiss 6). Orix points out that the underlying duty in SFE's negligence and gross negligence claims is that Orix failed to meet the servicing standard in the Trusts and the servicing standard is defined in the PSA's. (*Id.* at 6-7). Orix also claims that the breach of fiduciary duty claim relies on interpretation of the PSA's. (*Id.* at 7).

On the other hand, SFE argues that it and Orix have their primary places of business in Texas. (Pl.'s Resp. to Wells Fargo's MSJ 6 n.2). Wells Fargo is neither a Texas nor New York resident but "does significant business in Texas and knew or should have known that the servicing activities it had a fiduciary duty to monitor would be performed in Texas." (*Id.*). All of the servicing activities "were performed (or at least controlled) in Texas." (*Id.*). Finally, SFE contends that it purchased its certificates and suffered its injuries in Texas. (*Id.*).

---

[9] Orix cited *Red Roof Inns, Inc. v. Murat Holdings, LLC*, 2006 WL 2458563, at *5 (Tex. App.—Dallas 2006) for the proposition that the tort claims should be governed by Texas law because they depend upon an "'interpretation and enforcement' of the PSA's." However, this opinion was subsequently withdrawn and substituted with an opinion stating, "A choice of law provision in a contract that applies only to the interpretation and enforcement of the contract does not govern tort claims." *Red Roof Inns, Inc. v. Murat Holding, LL*, 223 S.W.3d 676, 684 (Tex. App.—Dallas 2007, no pet. h.) (citing *Stier v. Reading & Bates Corp.*, 992 S.W.2d 423, 433 (Tex. 1999)). In *Red Roof Inns*, the Court held that even though the franchise agreement contained a choice of law provision in favor of Ohio law, the claims for tortious interference, Louisiana Unfair Trade Practices Act violation, fraud/negligent misrepresentation, and breach of fiduciary duty would be governed by Louisiana law. *Id.* at 685. The breach of fiduciary duty claim was based on the actions and statements of the officers in inspecting the hotel and the fraud/negligent misrepresentation claim was based on failure to disclose certain information. *Id.*

The Court will consider the following factors when applying choice of law principles to tort cases: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000) (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2) (1971); *Gutierrez v. Collins*, 583 S.W.2d 312, 318-19 (Tex. 1979)). "Although the number of contacts is relevant, the qualitative nature of the contacts controls." *Jackson*, 245 F.3d at 523.

Considering these factors, the first factor weighs in favor of the application of Texas law because SFE's alleged injury occurred in Texas. SFE's breach of fiduciary duty, negligence, and gross negligence claims are based on Orix's servicing activities and Wells Fargo's "looking the other way" from those activities. (SAC ¶¶ 199-205, 220-26). Therefore, as for the second factor, the conduct causing the injury occurred at or was controlled from Orix's place of business in Texas. The third factor also favors Texas law because SFE and Orix have their primary places of business in Texas and are incorporated outside of Texas and New York while Wells Fargo has its principle place of business in South Dakota, not New York. (*Id.* at ¶ 5). Finally, the fourth factor, where the relationship is centered, may weigh in favor of New York law because the parties are related based on the New York Trusts. However, in light of the other factors, the Court concludes that the tort claims have a more significant relationship to Texas than New York. Accordingly, the Court will apply Texas law to the negligence, gross negligence, and breach of fiduciary duty claims.

## C.    Wells Fargo's Motion for Summary Judgment - Standing

Both Wells Fargo and Orix base their motions for summary judgment on SFE's lack of

evidence of injury or damages.  Wells Fargo argues that SFE lacks Article III standing because it failed to establish injury-in-fact.  Orix argues that SFE has failed to provide evidence of damages, which is an essential element of each of its causes of action.  These arguments are related in that they are based on the same lack of evidence; however, they each require a different legal analysis. The Court will first address Wells Fargo's standing argument and then turn to Orix's lack of damages argument as an alternative basis for granting summary judgment.  Either of these arguments alone would provide adequate grounds for granting summary judgment on all of SFE's claims.

1.      *Article III Standing Requirements*

Wells Fargo contends that SFE has no evidence that is has suffered an injury-in fact or that any of its alleged injuries were a result of the conduct of Wells Fargo; therefore, this Court does not have jurisdiction over SFE's claims.  (Wells Fargo's Br. 14).  The Court will consider SFE's standing as it relates to its claims against both Wells Fargo and the Orix Defendants.  It is of no moment that Orix did not raise a standing argument because the court may raise the issue of Article III standing *sua sponte*.  *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 331-32 (5th Cir. 2002) (raising Article III standing on appeal when the parties never raised it and the district court did not consider it).  In this case, SFE had the opportunity to address the issue of standing in its response to Wells Fargo's motion for summary judgment.

In order to have standing in federal court under Article III, a plaintiff must establish the following elements: (1)injury-in fact which is "concrete and particularized" and "actual or imminent not conjectural or hypothetical;" (2)"a causal connection between the injury and the conduct complained of;" and (3)likelihood, as opposed to mere speculation, "that the injury will be redressed by a favorable decision." *Id.* at 332.  "'The party invoking federal jurisdiction' bears the burden" of

proving these elements, and failure to establish one of them will deprive the federal court of jurisdiction. *Id.* (citations omitted). "At the summary judgment stage, 'the plaintiff can no longer rest on . . . mere allegations, but must set forth by affidavit or other evidence specific facts' validating his right to standing." *Id.* at 332-33 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

The Fifth Circuit has held that a plaintiff does not establish standing when it cannot establish injury or causation. In *Riviera*, the plaintiff claimed that she bought and used a drug, that the drug manufacturer did not provide enough warnings, that the drug was defective, that other people were injured by the drug, and that she had a claim for the money she used to purchase the drug. *Riviera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 (5th Cir. 2002). The plaintiff claimed that the loss of cash was an economic injury and offered suggestions for how the court could calculate damages. *Id.* at 319. The Court stated that "[M]erely asking for money does not establish an injury in fact" and held that the plaintiff did not demonstrate injury or causation. *Id.* at 319, 321.

In another Fifth Circuit case, the Court held that a plaintiff who failed to provide evidence of causation lacked standing. *Ford*, 301 F.3d at 333. In *Ford*, an orthopedic surgeon claimed that the defendant HMO's had falsely advertised that "their management techniques improve health care quality and that they allow patients and doctors to make their own treatment decisions." *Id.* at 331. The surgeon claimed that the HMO's' activities undercut quality and rationed medical care against the will of doctors, that the cost control policies reduced his income, and that the HMO's' advertising further reduced doctors' income because it attracted new customers which increased the HMO's' market power over the price of medical services. *Id.* The plaintiff claimed that his injury was the reduction of his income "caused by the defendants' restrictive cost-containment policies, which allegedly

have the effect of reducing payments to contract specialists." *Id.* at 333.  The Court held

that the plaintiff failed to meet the causation requirement because he was required to present

evidence affirmatively proving that his reduced income resulted from the defendants'

conduct.  *Id.*  There was "no evidence in the record to show that Ford's income has in fact

declined any more than would be expected as a result of events completely unrelated to the

HMO's' activities." *Id.* The plaintiff could not identify a patient he had lost as a result of the

conduct and presented no evidence that he received lower payments for his services than he

would have in the absence of the advertisements.  *Id.*  The Court explained:

> [S]ome or all of the decrease in Ford's income might have been a result of the fact
> that "he is not employed full time as a physician . . . and spends a significant amount
> of time filming a fishing show for a sports network."   Ford bears the burden of
> proving otherwise, and he has not met it.

*Id.*

The Seventh Circuit has addressed a situation analogous to the case at hand.  In *Slowiak*, a

meat distributor sued corporations claiming that they coerced him into joining a "maximum resale

price maintenance conspiracy in violation of Wisconsin antitrust law."  *Slowiak v. Land O'Lakes, Inc.*,

987 F.2d 1293, 1294-95 (7th Cir. 1993).   He claimed that the defendants would have taken action

against him if he had charged prices higher than those on the circulated list and that he lost profits

that he would have earned if he had been able to set his own prices.  *Id.* at 1295.  The Court held

that the plaintiff did not have Article III standing because he presented no evidence of injury as a

result of the conspiracy.  *Id.* at 1296.  The plaintiff conceded that his business had been profitable

and at his deposition stated that he was not sure whether he had lost profits because of the

conspiracy.  *Id.*  After the defendants moved for summary judgment for lack of evidence of injury,

the plaintiff filed a supplemental affidavit stating that if the prices had not been fixed "'there would

23

have been many occasions on which I would have charged more for many of the Schweigert products I sold.'" *Id.*   The Court found that the affidavit conflicted with his former deposition testimony stating that he did not know if he would have been able to sell the same amount of products at a higher price, that he could not remember a specific instance of when he wanted to charge more, and that he did not know how much he could have raised prices. *Id.* at 1296-97.  The Court held that the deposition testimony did not establish a distinct and palpable injury and that he could not cure this defect with a supplemental self-serving affidavit conflicting with his earlier deposition testimony. *Id.* at 1297.  The Court also held that even if the plaintiff lost money, there was no evidence that the loss was fairly traceable to the defendants' conduct; therefore, he lacked standing.  *Id.*  Having examined the standard and relevant case law, the Court moves to the question of whether SFE has established that it has been injured by the actions of the Defendants.

2.      *Standing Based on the Value of the Certificates*

SFE responded to Wells Fargo's motion for summary judgment with two claims of damages: (1) the purchase price of its certificates or their diminution in value and (2) the disgorgement of the gains made by the Defendants.[10]  (Pl.'s. Resp. to Wells Fargo's MSJ 4).  SFE explained its claim that the purchase price of its certificates had diminished or become worthless by stating that when the certificates were first placed in SFE's account they were worth $163,875, that the March 2007 account statement said they had a market value of $141,214, and that the latest account statement showed that the loss had increased to $25,464.  (Pl.'s Resp. to Wells Fargo's MSJ 8-9).  To support

---

[10]SFE appears to abandon its argument that its damages include potential tax consequences to the certificate holders because it does not mention this alleged injury in its responses.  SFE's expert has conceded that he is unaware that Wells Fargo failed to comply with tax regulations to the detriment of the Trusts. (Wells Fargo App. 42).

this proposition, SFE cited Charles Schwab account statements and the declaration of Thomas

Arjmandi.  (SFE App. 576-97; 1571-72).  In its response to Orix's motion for summary judgment,

SFE also cited Orix's Motion to Compel Rule 26 Disclosures (doc. 268) and Joint Status Report on

Orix's Motion to Compel Rule 26 Disclosures (doc. 356) to show that Orix must concede that the

market value of the certificates has declined.  (Pl.'s Resp. to Orix's MSJ 9).  In these documents,

Orix stated:

> [B]ased on information provided to the ORIX Defendants and its own investigation
> of SFE's alleged claims, the ORIX Defendants seriously question whether SFE's
> damage claim complies with Rule 11 of the Federal Rules of Civil Procedure as SFE
> has actually *made* money on its purchase.  The certificates that SFE acquired for
> approximately $165,000 are currently worth approximately $155,500 with SFE
> already receiving approximately $31,500 in principal and interest payments *for a net
> profit of approximately $22,000.*

(doc. 268 at 2 n.1).  Orix also stated, "[B]ased on the trading records, the certificates are currently

worth approximately $155,500 on the open market, with SFE already receiving approximately

$31,500 in principal and interest payments."  (doc. 356 at 3).

   With the exception of Thomas Arjmandi's declaration,[11] which the Court excluded in part II

---

[11] In its response, SFE points to Arjmandi's declaration discussing the Charles Schwab account records
and the Charles Schwab account records themselves. (SFE App. 576-97). To the extent that SFE contends
that the account records alone are sufficient evidence of injury, the Court rejects this argument because these
records should be excluded under Federal Rule of Evidence 702.  In *Van Der AA Investments, Inc.  v. Comm'r
of Internal Revenue*, 125 T.C. 1, at *4 (T.C. 2005), the Court refused to consider as evidence on a motion for
summary judgment an Arthur Anderson report describing the fair market value of the company.  The report
was supported by an affidavit of an officer of the company stating that the company had engaged Arthur
Anderson to determine this value. *Id.*  The Court reasoned that since the author had relied on specialized
knowledge to prepare the report, it would not be admissible unless the author was testifying as an expert. *Id.* at
*6 (citing FED. R. EVID. 702). Allowing the introduction of the report "would allow the introduction of
opinion testimony by lay witnesses in the form of a report as to scientific, technical, or other specialized
matters and would allow an expert to express his opinions in a report without being subject to cross-
examination on the facts and data underlying that opinion." *Id.*  In this case, admitting the Charles Schwab
account records would allow SFE to present evidence of the value of the certificates without giving the
Defendants the opportunity to cross-examine the author of the report. Wells Fargo made a similar argument

above, SFE has not provided evidence that the value of its certificates has decreased. SFE does not meet its burden of coming forward with "specific facts showing there is a *genuine issue for trial*" by citing excerpts from Orix's Motion to Compel Rule 26 Disclosures. *Matsushita*, 475 U.S. at 587. As in *Riviera*, asking for money or reciting the purchase price does not establish injury. 283 F.3d at 319. Similar to the plaintiff in *Slowiak* who conceded that his business had been profitable, SFE has received all interest and principal payments on the certificates that it is due. *Slowiak*, 987 F.2d at 1296; Wells Fargo App. 404. After saying that he did not know what SFE's damages are, Thomas Arjmandi may now not defeat summary judgment with a self-serving affidavit. *Id.* at 1297. SFE has not provided evidence and may not rest on "mere allegations" at the summary judgment stage. *Ford*, 301 F.3d at 332-33. Therefore, SFE does not satisfy the first element of Article III standing — injury-in-fact.

Furthermore, even if SFE can establish that the value of the certificates has decreased, it has provided no evidence that this decrease was caused by the Defendant's conduct as opposed to fluctuations in interest rates and the declining principal balance of the certificates. (Wells Fargo's Br. 17). Wells Fargo explained that certificates trade for less over time as a result of the repayment of principal and the reduction of the principal balance. (Wells Fargo's Br. 16 (citing Decl. of Thomas Biafore at App. 7)). The dominant factor in valuing certificates is the fluctuation of interest

---

with respect to Arjmandi's declaration. (Wells Fargo's Reply 7-8 (citing FED. R. EVID. 702; *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)) ("Rather, he [Arjmandi] admits he simply downloaded and presented as expert evidence account statements from Charles Schwab. In other words, rather than presenting an expert whose opinions and methodology could be scrutinized, Mr. Arjmandi simply reads the opinion of a third party [the Charles Schwab report] who proffers a 'market value' from time to time, without any explanation of how that term is defined, how the opinion is developed or the qualification of the individual developing it. This is no evidence and should be disregarded."). Wells Fargo did not specifically raise this objection with respect to the Charles Schwab account statements themselves; however, this Court may raise the issue of the admissibility of evidence *sua sponte*. *See United States v. Wallace*, 972 F.2d 344, at *3. (4th Cir. 1992).

rates which during the time that SFE held the certificates made risk-free debt valuable and would have caused the value of SFE's certificates to decrease.   (Wells Fargo's Br. 17 (citing Decl. of Thomas Biafore at App. 7)).   Finally, Wells Fargo claims that the rating of the certificates and the security of the certificates has improved since the conduct that SFE complained of was reported in industry publications.   (Wells Fargo's Br. 17(citing Decl. of Barry S. Schwartz at App. 404)).   SFE has the burden of proving that its "injury" was not caused by factors unrelated to the Defendants' activities. Wells Fargo pointed out the lack of evidence of causation, and SFE did not provide evidence. *See Ford*, 301 F.3d at 333.   Accordingly, SFE has not met its burden of proving causation. The Court now turns its attention to SFE's second claim of damages–disgorgement.

3.      *Standing Based on Disgorgement Damages for Breach of Fiduciary Duty*

SFE claims that it need not show injury in order to recover disgorgement for breach of fiduciary duty.   (Pl.'s Resp. to Wells Fargo's MSJ 5).   As discussed below in part III.D.3., the Court agrees that this proposition is correct under Texas law.   However, a state law cause of action that does not require injury will not give a federal court jurisdiction when the court lacks Article III standing:

> Although standing requirements in state courts are often less stringent than those of Article III, the issue lacks relevance here, as standing in federal court is determined entirely by Article III and depends in no degree on whether standing exists under state law.

*Int'l Primate Prot. League v. Admins. of the Tulane Educ. Fund*, 895 F.2d 1056, 1061 (5th Cir. 1990) (citing *Phillips Petroleum v. Shotts*,  472 U.S. 797, 804 (1985)), *rev'd on other grounds*, 500 U.S. 72 (1991), *superseded by statute on other grounds*, 28 U.S.C § 1442(a)(1) (as amended 1996), *as recognized in Winters v. Diamond Shamrock*, 149 F.3d 387, 397 (5th Cir. 1998) ; *see also* 13A CHARLES ALAN

27

WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3531.14

("Of course state rules that recognize standing need not be honored if Article III requirements are

not met.").

The Second Circuit has held that the district court incorrectly dismissed the complaint based

on lack of standing when the plaintiffs did not allege injury as a result of the defendant's actions.

*Walton v. Morgan Stanley & Co.*, 623 F.2d 796, 798 (2d Cir. 1980).   The Court reasoned that

Delaware law did not require injury for a breach of fiduciary duty claim.  *Id.*  The Court also stated:

> We need not address the question whether standing in [a] diversity case is a matter
> of state or federal law, for the recognition of standing of a shareholder to bring a
> derivative suit for the profits made by one who allegedly breached a fiduciary duty
> owed to the corporation accords with both federal and Delaware notions of
> standing.

*Id.* at 798 n.4.  This Court need not decide whether to apply the rule of *Walton* to a non-derivative

breach of fiduciary duty claim in the Fifth Circuit because, as discussed below in part III.D.3, the

Court has determined that SFE's breach of fiduciary duty claim would fail on other grounds.

Accordingly, the Court **GRANTS** Wells Fargo's motion for summary judgment on all of SFE's

claims against Wells Fargo and Orix.  The Court turns next to Orix's motion for summary judgment.

## D.  Orix's Motion for Summary Judgment - Lack of Damages as an Element of SFE's Causes of Actions

### 1.    *SFE's RICO, Negligence, and Gross Negligence Claims*

In the alternative, even if SFE could establish standing, the results would be similar based on

Orix's motion for summary judgment.  Orix  argues that summary judgment is proper because SFE

has failed to provide evidence of an essential element of each of its causes of action — damages.[12]

---

[12]The Court recognizes that there is a distinction between showing the existence of damages and

(Orix's Br. 13).

To establish RICO standing, a plaintiff must satisfy two elements: (1) injury and (2) causation. *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 606 (5th Cir. 1998); *see also Commercial Union Assurance Co. v. Milken*, 17 F.3d 608, 612 (2d Cir. 1994) ("[W]ithout provable damages, no viable RICO cause of action may be maintained."). In *First*, the plaintiffs' RICO claim was based on the insurance company's mailing of an allegedly fraudulent damages assessment report that "(1) failed to consider the full extent of damage to their home and (2) made improper repair recommendations." *First v. Allstate Ins. Co.*, 222 F. Supp. 2d 1165, 1170, 1175 (C.D. Cal. 2002). The insurance company had paid the plaintiffs $158,080.04 for the damage to their home, and the plaintiffs failed to present evidence that the damage to their home exceeded that amount. *Id.* at 1171. The plaintiffs' expert opined that the damage to the home was extensive, that the assessment report was inaccurate and vague, and that "[b]ased on the vagueness and inaccuracies noted in the . . . report, any attempt at determination of estimates to repair would be impossible." *Id.* The Court held that the plaintiffs could not survive summary judgment on their RICO claim because there was no triable issue of fact of whether they were injured by the report. *Id.* at 1175; *see also Waste Conversion, Inc. v. Rollins Envtl. Servs. (NJ), Inc.*, 1989 WL 79768, at * 7-8 (E.D. Pa. 1989) (holding that the plaintiff did not raise a genuine issue of material fact as to the injury element of its RICO claim when it alleged that it was injured in its business because it incurred costs including the loss of

quantifying those damages and that a plaintiff need not present evidence quantifying its damages. *Potomac Elec. Co. v. Electric Motor & Supply, Inc.*, 262 F.3d 260, 265 (4th Cir. 2001); *see also Dyll v. Adams*, 167 F.3d 945, 947 (5th Cir. 1999) (applying Texas law) (quoting *McKnight v. Hill & Hill Exterminators*, 689 S.W.2d 206, 207 (Tex. 1985) ("Uncertainty as to the fact of legal damages is fatal to recovery, but uncertainty as to the amount will not defeat recovery.") However, the Court finds that SFE has not provided sufficient evidence to show the existence of damages.

its sales contract but did not submit evidence of any costs).

As for SFE's negligence claims, under Texas law, a cause of action for negligence or gross negligence requires (1) a legal duty owed by one person to another, (2) a breach of that duty, and (3) damages proximately caused by that breach. *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002) (for elements of negligence); *Bykowicz v. Pulte Home Corp.*, 950 F.2d 1046, 1053 (5th Cir. 1992) (for elements of gross negligence). Failure to show damages is an appropriate ground for granting summary judgment on a negligence or gross negligence claim. *Johnson v. Brewer & Pritchard*, 73 S.W.3d 193, 211 (Tex. 2002) (granting summary judgment on negligence claim when plaintiff failed to show damage); *Gen. Star Indem. Co. v. Sherry Brooke Revocable Trust*, 243 F. Supp. 2d 605, 613 (W.D. Tex. 2001) (holding that lack of summary judgment evidence of causation and damages precludes a tort claim). In *Weinberg*, summary judgment was appropriate on a Washington negligence claim based on lack of damages when the plaintiff responded to interrogatories that the amount of damages would be the subject of an expert report and that he did not know what his damages were but later did not update his answers. *Weinberg v. Whatcom County*, 241 F.3d 746, 750, 752 (9th Cir. 2001). The Court stated, "'Summary judgment is appropriate where appellants have no expert witnesses or designated documents providing competent evidence from which a jury could fairly estimate damages.'" *Id.* at 751 (quoting *McGlinchey v. Shell Chem. Co.*, 845 F.2d 802, 808 (9th Cir. 1988)).

Having established that RICO and negligence claims require evidence of damages, the Court concludes that SFE has not met this requirement. As discussed above with respect to SFE's standing, without Arjmandi's declaration, SFE has failed to produce any evidence that it has been damaged. Even if the Plaintiff's evidence of damages was sufficient to survive summary judgment,

30

SFE has produced no evidence that its alleged damages were caused by the Defendants' actions, which is a requirement of both a RICO claim and a Texas negligence and gross negligence claim.[13] Accordingly, summary judgment is appropriate on SFE's RICO, negligence, and gross negligence claims. The Court will now consider the requirement of damages as it relates to SFE's breach of contract claims.

### 2. SFE's Breach of Contract Claim

Under New York law regarding a breach of contract claim, even if the plaintiff fails to raise an issue of material fact as to actual damages, he or she may proceed to trial to recover nominal damages. *V.S. Int'l, S.A. v. Boyden World Corp.*, 1993 WL 59399, at * 8 (S.D.N.Y. 1993); *Hirsch Elec. Co., Inc. v. Cmty. Servs., Inc.*, 536 N.Y.S.2d 141, 143 (N.Y. App. Div. 1988) (citing Farnsworth, Contracts, § 12.8, at 838-839) ( "[I]t is a well-settled tenet of contract law that even if the breach of contract caused no loss or if the amount of loss cannot be proven with sufficient certainty, the injured party is entitled to recover as nominal damages a small sum fixed without regard to the amount of the loss, if any.").   In *Hirsch*, the Court held that the plaintiff's damages claim for lost profits based on breach of contract was too speculative and limited the plaintiff at trial to a claim for nominal damages. 536 N.Y.S.2d at 142. Because the Court has found that SFE has not established damages, SFE would be limited to nominal damages for breach of contract at trial.

---

[13]Wells Fargo moved for summary judgment on the ground that there was no evidence that their conduct caused the alleged decline in the market value of the certificates, and Orix made this argument in its Reply Brief (Wells Fargo's Br. 16, Orix's Reply 5-6).

*3. SFE's Breach of Fiduciary Duty Claim*

SFE has correctly argued that a plaintiff need not prove actual damages in order to recover disgorgement of fees for the breach of a fiduciary duty. *Burrow v. Arce*, 997 S.W.2d 229, 239-40 (Tex. 1999). Therefore, SFE's lack of evidence of damages will not preclude its breach of fiduciary duty claim. However, the Defendants argue that SFE must provide evidence that the Defendants have derived a benefit resulting from or proximately caused by their breaches of fiduciary duty. (Orix Reply 2-3; Wells Fargo's Reply 3). Disgorgement is a remedial measure rather than a punitive one and is limited to "property causally related to the wrongdoing" at issue. *Allstate Ins. Co. v. Receivable Fin. Co., L.L.C.*, 501 F.3d 398, 413 (5th Cir. 2007) (applying Texas law) (citing *SEC v. First City Fin. Corp.*, 890 F.2d 1215, 1231 (D.C. Cir. 1989)). "Accordingly, the party seeking disgorgement must distinguish between that which has been legally and illegally obtained." *Id.*; *see also Swinnea v. ERI Consulting Engineers, Inc.*, 2007 WL 2447057, at *11-*12 (Tex. App - Tyler 2007) ("[A] fiduciary must account for, and yield to the beneficiary, any profit he makes as a result of his breach of fiduciary duty. As explained above, Appellees did not prove any actual damages or reasonably certain lost profits. Neither did Appellees prove that Swinnea obtained any ill gotten gains at ERI's expense. Therefore, there is no evidence to support an award of damages for breach of fiduciary duty, equitable or otherwise." (citations omitted)). The Fifth Circuit recently addressed this issue and held that because the plaintiffs did not produce evidence regarding what amount of money the defendant's obtained through their wrongdoing as opposed to legitimate activities, the

evidence was insufficient to sustain a disgorgement damages award.[14]  *Allstate*, 501 F.3d at 414.

The Court discussed the plaintiff's burden of proving disgorgement damages:

> In actions brought by the SEC involving a securities violation, "disgorgement need
> only be by a reasonable approximation of profits causally connected to the violation."
> However, "in a private action, the party seeking monetary compensation may have a
> greater burden to prove its claim to the amount requested."

*Id.* at 413 (quoting *First City*, 890 F.2d at 1231, 1232 n.24).  The Court declined to determine

whether a private party was required to meet a more onerous burden because it held that the

plaintiff had not provided a reasonable approximation of what was illegally obtained.  *Id.*   This

Court need not make that determination today because it finds that SFE has not provided a

reasonable approximation of what Wells Fargo or ORIX obtained as a result of the alleged breach of

fiduciary duty.    SFE cites *Corporate Interiors v. Pappas*, 784 N.Y.S.2d 919, at *6 (N.Y. Sup. Ct.

2004) for the proposition that once SFE presents prima facie evidence of the Defendants' gains, the

burden shifts to the Defendants to demonstrate any legitimate costs because they are in the

exclusive possession of that information.  (Pl.'s Resp. to Orix's MSJ 8).  Here, as explained below,

the Court finds that SFE has not presented evidence "of the amount [the Defendants] gained as a

result of the breach" to establish prima facie evidence of the Defendants' gains.  *Id.*

Turning to SFE's evidence of disgorgement damages, SFE claims disgorgement of at least

$8,032,907.01 from Orix "in fees and interest on reimbursements for performing work as master and

special servicer of the MLMI and FULBBA trusts since January 1, 2005."  (Pl.'s Resp. to Orix's MSJ

5-6).  SFE supports this amount with Orix's response to an interrogatory requesting the fees earned

---

[14] The standard for summary judgment mirrors the standard for a directed verdict and requires
"sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v.
Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

for each year from the inception of the MLMI and FULBBA Trust to the present.[15]  SFE, in a footnote, claims that its disgorgement gains should not be limited to this amount because the summary judgment evidence reveals that Orix earned a higher amount of fees and that Orix received benefits from its own investments in the trusts as a result of its breach of fiduciary duty. (Pl.'s Resp. to Orix's MSJ 6 n.2).  For this proposition, SFE cites reports from its expert Victor Moore quantifying amounts of servicing fees, special servicing fees, trustee fees, reimbursement of interest on advances, and distributions on the B pieces "as a result of the servicing relationship that was technically a conflict of interest between the master servicer (ORIX) and the special servicer (also ORIX)." (SFE App. 574-75).[16]  As for Wells Fargo, SFE claims disgorgement fees of at least $360,460 "in fees since it began serving as Trustee for the Trusts." (Pl.'s Resp. to Wells Fargo's MSJ 5).  To support this claim, SFE cites the same expert report from Victor Moore mentioned  above and a chart identifying fees, which Wells Fargo produced with its Responses to SFE's First Set of Interrogatories.  (SFE App. 573-75, 1543-45).

Other than Victor Moore's conclusory assertion that these fees were a result of a conflict of interest, SFE offers no evidence to connect all of the fees that Orix and Wells Fargo have earned since the inception of the trusts to their alleged breaches of fiduciary duty to SFE. As Wells Fargo

---

[15]The interrogatory stated: "Please state the amounts of monies paid by the MLMI Trust to ORIX Capital Markets, LLC as Servicer and/or Special Servicer for each year the inception of the MLMI Trust to the present for each of the following: (a) repayment of principal and interest (P&I) advances; (b) repayment of litigation expenses; (c) repayment of other advances; (d) interest paid on P & I advances, advances for litigation expenses, and other servicing advances; (e) fees for serving as master servicer; (f) fees for serving as special servicer and (g) any other fees or reimbursement of expenses." (SFE App. 1551-52).  The interrogatory for the FULBBA trust was almost identical.  (SFE App. 1558-59).

[16]SFE also cites pages 237-76 of its appendix in support of disgorgement damages against Orix and Wells Fargo.  This citation is to several pages of graphs with no label or any explanation of what these documents are.  The Court will disregard this evidence.

points out, "SFE cannot simply claim that sometime after SFE became a certificate holder in 2005, Wells Fargo breached a fiduciary duty and then recover every cent Wells Fargo has earned for the indenture trustee services it has provided since 1999." (Wells Fargo's Reply 3-4). Wells Fargo's fees were fixed in the governing PSA's as a percent of the principal balances of the loans in the trusts. (*Id.* at 4). In conclusion, because SFE has not offered a reasonable approximation of what the Defendants have earned as a result of their alleged breach of fiduciary duties, SFE is not entitled to disgorgement. *See Allstate*, 501 F.3d at 413. Accordingly, Wells Fargo and Orix's motions for summary judgment on the breach of fiduciary duty claims are granted.[17]

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** the Defendants' motions to exclude the portion of Arjmandi's declaration identifying the value of the certificates and **DENIES as Moot** the motions to exclude other evidence. The Court also **GRANTS** the Defendants' motions for summary judgment on all of SFE's claims because SFE has failed to meet its burden of establishing Article III standing. In the alternative, even if SFE has established standing, summary judgment would be appropriate on all of SFE's claims based on lack of damages except for the breach of contract claims, which would be limited to nominal damages.

In light of the significant impact that this Order will have on the case, the Court **DIRECTS** SFE and Orix and their lead counsel to hold a **face-to-face meeting** to discuss **settlement** of this case by **January 15, 2008**. By **January 30, 2008**, Orix is **ORDERED** to notify the Court in writing of (1) whether the parties have reached a settlement, and, if not, (2) whether it intends to pursue

---

[17]Because the Court has granted the Defendants' motions for summary judgment on all of SFE's claims, it is unnecessary for the Court to consider the other grounds for summary judgment.

its counterclaims against SFE.   The Court will defer disposition of SFE's motion for summary

judgment on Orix's counterclaims until that time. The trial setting and the deadlines imposed by

the scheduling order (doc. 469) are also stayed until that time.   Because Wells Fargo has no

counterclaims against SFE, Wells Fargo is **DISMISSED** from this case.

SO ORDERED

SIGNED December 14, 2007

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE