**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SUPER FUTURE EQUITIES, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:06-CV-0271-B** |
| | § | |
| **WELLS FARGO BANK, N.A., et al.,** | § | |
| | § | |
| **Defendants.** | § | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**
**REGARDING MOTION AND SUPPLEMENTAL MOTION FOR SANCTIONS**
**AND CONTEMPT FOR INTENTIONAL SPOLIATION OF EVIDENCE**

Pursuant to the District Court's Order (doc. 338), ORIX Defendants' Motion for Sanctions and Contempt Against Plaintiff and Counter-Defendant Super Future Equities, Inc. and Counter-Defendant Thomas Arjmandi and Cyrus Rafizadeh for Intentional Spoliation of Evidence (doc. 319), ORIX Defendants' Supplemental Motion for Contempt and Sanctions Against Plaintiff and Counter-Defendant Super Future Equities, Inc. and Counter-Defendants Thomas Arjmandi and Cyrus Rafizadeh for Intentional Spoliation of Electronic Evidence (doc. 333), and Defendant Wells Fargo's Motion to Join ORIX Defendants' Motion for Sanctions and Contempt (doc. 354) (collectively, the "Motion for Sanctions") have been referred to the United States Magistrate Judge for hearing, if necessary, and determination. A response was filed by Super Future Equities, Inc. ("SFE"), Thomas Arjmandi ("Arjmandi"), and Cyrus Rafizadeh ("Rafizadeh") to the Motion for Sanctions and Contempt for Alleged Intentional Spoliation of Evidence on August 23, 2007. (Doc. 387.) A reply was filed on September 7, 2007. (Doc. 453.) A hearing was held on December 7, 2007. The Court heard all argument and evidence properly before the Court, including the reports

1

of the independent expert, Mr. Andrew Rosen; the evidence presented at the hearing; demonstrative evidence that was later submitted as supplemental evidence; and the previous record before this Court related to evidentiary matters.  Having considered all argument and evidence, the Court makes these findings and conclusions.

## I.
## BACKGROUND

SFE brought this lawsuit against Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and ORIX Capital Markets, LLC ("ORIX Capital"), ORIX USA Corporation ("ORIX USA"), John Dinan, Michael F. Wurst, Clifford Weiner, and James R. Thompson (collectively, the "ORIX Defendants").  By its complaint, SFE alleges that Wells Fargo and the ORIX Defendants have breached various duties allegedly owed to SFE based on its status as a certificateholder in two commercial mortgage-backed securities trusts, known as the MLMI and FULBBA Trusts.  SFE asserts claims for breach of fiduciary duty, breach of contract, RICO violations, negligence, gross negligence, and injunctive relief, all arising out of Wells Fargo's role as Trustee of the MLMI and FULBBA Trusts, and ORIX Capital's position as Master Servicer and Special Servicer of the two trusts.

Wells Fargo and the ORIX Defendants deny SFE's allegations, and assert that SFE's acquisition of the MLMI and FULBBA certificates was merely a pretext to allow SFE to retaliate for a lawsuit in Louisiana that ORIX Capital and Wells Fargo brought on behalf of the MLMI Trust. According to Defendants, that lawsuit resulted in ORIX Capital and Wells Fargo obtaining a judgment of more than ten million dollars for fraud committed by Mondona Rafizadeh (the mother of Cyrus Rafizadeh and the aunt of Thomas Arjmandi) and two business entities controlled by the Rafizadeh family, including Counter-Defendant Schuman Rafizadeh.

2

ORIX Capital and ORIX USA (collectively "ORIX") subsequently filed counterclaims against SFE, Arjmandi, and Rafizadeh, as well as additional Counter-Defendants Keon Arjmandi, D.R. (a minor), and Schumann Rafizadeh.  ORIX asserts counterclaims for libel *per se*, business disparagement, tortious interference, conspiracy, and copyright infringement.  The majority of ORIX's counterclaims arise out of various statements and documents published on the Predatorix website.  ORIX alleges that each of the Counter-Defendants are responsible, either directly or as part of a common law conspiracy, for the materials published on Predatorix.  The Counter-Defendants assert that the sole person responsible for the contents of the website is Cyrus Rafizadeh; the remainder of the Counter-Defendants deny that they have anything to do with Predatorix.

After the December 7, 2007 hearing on this matter, the Court entered a Memorandum Order granting Defendant Wells Fargo Bank, N.A.'s Motion for Summary Judgment and ORIX Defendants' Motion for Summary Judgment.  By that order, the Court granted summary judgment in favor of Defendants on all of the claims asserted by SFE.  ORIX's counterclaims remain pending before the Court.

## II.
## FINDINGS OF FACT

### A.      SFE, Arjmandi, and Rafizadeh

SFE is the Plaintiff in this case.  Arjmandi is a third-party defendant (or "Counter-Defendant") in this case.  Arjmandi is the nephew of Counter-Defendant Schuman Rafizadeh and his wife, Mondona Rafizadeh.  Arjmandi has been, at all times relevant to the Motion for Sanctions, the President of SFE, as well as a member of SFE's board of directors and one of its four shareholders.  By reason of his education, training, experience, and employment, Arjmandi is a sophisticated and expert user and developer of computer systems, including both software and

hardware. Arjmandi purports to make all of SFE's business decisions. He purports to direct all litigation on behalf of SFE, and has testified he was the person responsible on behalf of SFE for gathering discovery for production. Arjmandi essentially is SFE for the purposes of the motion for sanctions. Therefore, it is appropriate to sanction SFE based on Arjmandi's actions. The Court finds that Arjmandi is not a credible witness.

Rafizadeh is a Counter-Defendant in this case. Rafizadeh is the son of Counter-Defendant Schuman Rafizadeh and his wife, Mondona Rafizadeh. Rafizadeh has been, at all times relevant to the Motion for Sanctions, the Vice-President and Treasurer of SFE, as well as a member of SFE's board of directors and one of its four shareholders. Rafizadeh was involved in the litigation on behalf of SFE, and there was testimony that he provided documents to Arjmandi for production in this case. Like Arjmandi, Rafizadeh essentially is SFE for the purposes of the motion for sanctions. Therefore, it is appropriate to sanction SFE based on Rafizadeh's actions.

Rafizadeh claims to be the sole person responsible for the administration of the website www.predatorix.com ("Predatorix"). By reason of his education, training, experience, and employment, Rafizadeh is a sophisticated and expert user of computer systems, including, software, hardware, and internet web site administration. Rafizadeh's only testimony regarding the Motion for Sanctions is a declaration submitted in support of SFE, Arjmandi, and Rafizadeh's Response to the Motion for Sanctions. Rafizadeh's declaration is not credible.

### B.    The Preservation Order

During a deposition on September 11, 2006, Arjmandi testified that he had thousands of documents on his computer, including documents that would have been responsive to Defendants' document requests. He testified that SFE operated as a virtual company and that most, if not all, of

SFE's electronic documents resided on one of Arjmandi's computers. Arjmandi further testified that he had not produced documents related to the Predatorix website because his only involvement with Predatorix was "pretty much" the registration of the website. During the September 11, 2006 deposition, Arjmandi refused to agree not to destroy any electronic documents, stating that he routinely destroys his personal documents.

On September 25, 2006, the Court entered an order (the "Preservation Order") providing that "Thomas Arjmandi and [Cyrus Rafizadeh] are ordered to preserve as evidence the hard drives described in the motion to compel (doc. 92), image the hard drives, and file the images with the Court under seal." On or about September 26, 2006, Rafizadeh tendered his hard drive to the Court. On or about October 26, 2006, Arjmandi tended a purported image of his hard drive to the Court, which was contained on a single DVD.

On March 6, 2007, ORIX filed a motion to release the images of Arjmandi and Rafizadeh's hard drives. On May 17, 2007, the Court issued an order directing the parties to agree on an independent forensic expert to review the hard drive images for relevant documents. By mutual agreement, the parties employed Andrew Rosen of ASR Data Acquisition & Analysis as the independent forensic expert to conduct the review of Arjmandi and Rafizadeh's purported hard drive images.

###### C.     Thomas Arjmandi's Spoliation

Failure to Preserve Hard Drive

After tendering the purported image of his hard drive to the Court on October 26, 2007, Arjmandi continued to use the hard drive on his computer, including the addition, deletion, and alteration of files contained on the hard drive. Because Arjmandi continued to add, delete, and

modify files contained on his hard drive even after the Court's preservation order, the Court finds that Arjmandi failed to comply with the order to "preserve as evidence" his hard drive. The Court finds that Mr. Arjmandi's actions in this regard were done intentionally and in bad faith, in order to deprive Defendants of the opportunity to discover relevant and responsive materials that existed on Arjmandi's hard drive as of September 25, 2006, and not from any inability to comply.

<u>The Arjmandi DVD</u>

On June 1, 2007, Mr. Rosen informed the parties that the purported image of Arjmandi's hard drive was actually a damaged DVD-ROM containing a file named "C_Drive001.v2i" (the "Arjmandi DVD"). Arjmandi claimed the DVD was in working order when he tendered it to the Court, but it proved to be damaged when Mr. Rosen received it. Due to the damaged state of the DVD, Mr. Rosen was never able to recover the data contained on the Arjmandi DVD.

The only reasonable explanation for why the Arjmandi DVD was damaged and inoperable when it was received by Mr. Rosen is that it was damaged by Arjmandi before it was submitted to the Court. The Court finds that Arjmandi acted intentionally and in bad faith by damaging the Arjmandi DVD to render it inoperable, in order to prevent the Defendants from gaining access to the data contained on the Arjmandi DVD and the hard drive for which it purportedly contained an image, not from any inability to comply.

<u>The "Sparse" Images</u>

Apart from it being unreadable, the Arjmandi DVD contained only the active files of Arjmandi's hard drive and did not include copies of unallocated space on the hard drive. Arjmandi was aware at the time he made the image that information is contained on the unallocated space on a hard drive and that such information can be recovered. Mr. Rosen requested a replacement copy

of the Arjmandi DVD on June 1, 2007.  On June 7, 2007, Arjmandi submitted a hard disk drive bearing the serial number 5NF2M56A (the "First Arjmandi Hard Drive").

Mr. Rosen determined that the First Arjmandi Hard Drive contained two compressed files, entitled "System" and "Data."  Mr. Rosen determined that both files were "sparse" files, meaning they had been imaged in a manner so that only active files were copied, while "unallocated" areas of the source drive (which would also include any deleted files) were excluded from the images. Unallocated space is also important because of the metadata contained there, which shows where data was deleted, when it was deleted, and how much data may have been deleted.  Unallocated space also makes possible a forensic reconstruction of data that has been deleted but not yet overwritten.  Without this unallocated space, the First Arjmandi Hard Drive did not contain true and accurate copies of the entire original device or devices from which Arjmandi had imaged the data contained on the hard drive.

Arjmandi has extensive knowledge and experience in the use of computers, knowledge and experience in the use of data imaging software.  The Court finds that Arjmandi fully understood that the Court had directed him to create a complete image of his hard drive, and not merely a "sparse" image of active files only.  Arjmandi knew how to create a full image of his hard drive, and that he understood from his extensive computer expertise the importance of preserving a full hard drive image that would capture not only active files but unallocated space as well.  Instead, Arjmandi deliberately chose to create sparse images of the System and Data files in order to conceal the fact that he had deleted files, and to prevent Defendants from gaining access to any deleted files residing on the unallocated portion of his hard drive.  The Court further finds that Arjmandi took these actions deliberately and in bad faith, not from any inability to comply.

The "System" Image

After determining that the images on the First Arjmandi Hard Drive were only sparse images, Mr. Rosen requested that Arjmandi provide full images of both the "System" and "Data" partitions. (Def.'s App. Mot. Sanctions at Ex. C, App. 102.)  On June 21, 2007, Arjmandi provided another hard drive, this one bearing serial number R421L36E (the "Second Arjmandi Hard Drive).  (*Id.* at 103.)  The Second Arjmandi Hard Drive contained a full image of the "System" file, which had previously been produced as a sparse image on the First Arjmandi Hard Drive. (*Id.*)

Mr. Rosen determined that a program named "Window Washer" had been installed on the Second Arjmandi Hard Drive on or about March 30, 2007, then uninstalled on or about May 4, 2007. (*Id.* at 104.)  The primary function of Window Washer is to permanently erase various types of data from disk drives.  (*Id.*)  This prevents anyone from accessing or reconstructing the data that would otherwise be recoverable from the unallocated sectors of the hard drive.  (*Id.*)  Of particular note to the Court is the fact that the default settings on the Window Washer program are such that when a user runs the program, the unallocated area of the drive is not wiped.  Instead, the user must intentionally change the default settings on Window Washer program to select this function.

The Second Arjmandi Hard Drive included approximately 14,060 entries for deleted files contained within the file system. (*Id.*)  Deleted file entries for files created before May 4, 2007 had their associated data "wiped" from the unallocated area of the drive by Arjmandi's use of the Window Washer software.  (*Id.*)  As a result of this wiping, it is impossible to determine what files were deleted from the "System" drive between March 30 and May 4, or even what the names of those deleted files were, much less recover or restore those files.  (*Id.*)  In other words, Arjmandi permanently and irreparably destroyed them though his use of the Window Washer program after

8

this Court had entered the Preservation Order.

Among the sectors of the Second Arjmandi Hard Drive that were not wiped with Window Washer, there were references to at least one file that would have been responsive to search terms employed by Mr. Rosen to locate relevant and responsive documents. (*Id.*) However, there were no references to that document in the drive's file system, which indicates that the file itself had been wiped with Window Washer. (*Id.*) The Court finds that large quantities of files and data were permanently and intentionally removed from the disk and rendered unrecoverable between March 30, 2007 and May 4, 2007 through Arjmandi's use of the Window Washer program. (*Id.* at 105.)

The Court further finds Arjmandi intentionally changed the default settings on Window Washer program to ensure that files he deleted would be permanently erased from the unallocated area of the drive and rendered non-recoverable to Defendants and this Court. Arjmandi took these actions intentionally and in bad faith, not from any inability to comply. The Court finds that Arjmandi's explanations for his erasure of files and data with Window Washer are not credible. Moreover, the Court finds that documents pertaining to the subject matter of this litigation were included in the files and data Arjmandi deleted and erased with Window Washer. The fact that at least one of the files permanently erased with Window Washer would have been relevant and responsive to Defendants' document requests, as well as all of the circumstances surrounding Arjmandi's permanent erasure of files on the System drive, create a strong inference that the files wiped by Arjmandi included materials that would have harmed SFE's case, would have strengthened Defendants' defenses, and would have supported ORIX's counterclaims against all Counter-Defendants.

The Court finds that the data Arjmandi failed to copy onto the Arjmandi DVD and the data

permanently erased from the System drive included materials that would have harmed SFE's case, would have strengthened Defendants' defenses, and would have supported ORIX's counterclaims against all Counter-Defendants.  Arjmandi's delivery of an incomplete image of his hard drive and subsequent permanent erasure of data from the System drive substantially prejudiced Defendants' ability to defend themselves in this case because the deleted materials would have been essential to their case, but are no longer available to Defendants.  Arjmandi's delivery of an incomplete image of his hard drive and subsequent permanent erasure of data from the System drive substantially prejudices ORIX's ability to prosecute its counterclaims against the Counter-Defendants, because the erased materials would have been essential to its case, but are no longer available to ORIX.

The "Data" Image

Despite Mr. Rosen's request for a full image of the source of the "Data" image contained on the First Arjmandi Hard Drive and the Order of this Court, Arjmandi never produced a full Data image.  (*Id.* at 107.)  Because the Data image was a sparse image, it did not include the unallocated data from the source from which it was imaged.  (*Id.*)  Analysis of the file system contained on the Data image revealed entries for over 82,000 files that had been deleted from the source device from which the Data image was created.[1]  Of those 82,000 deleted files, more than 42,000 included the word "ORIX" in their fully qualified path name or file name.[2]  None of the deleted files could be

---

1. In Mr. Rosen's initial report he found that there were over 82,000 entries for deleted files defined within the file system.  (Pl.'s App. Mot. Sanctions at Ex. C, App. at 107.)  Mr. Rosen, in this report, noted that there appeared to be "some degree of duplication among the deleted file entries." (*Id.*)  In a supplemental report, Mr. Rosen "de-duplicated" the list of files deleted form the "Data" image.  He determined that the number of deleted was 57,371 and not 85, 691. (Supp. Computer Data Analysis Report at 2.)

2. Despite reducing the number of unique delete files from 85,691 to 57, 371, the number of files that included the word "ORIX" was never changed.

recovered from the Data image because it was created as a "sparse" image.

The deleted files on the Data image had been copied onto the source device in two large batches on November 19, 2006 and May 2, 2007.  (Notice Filing Declaration David L. Cowen, Ex. D at 2.)  Based on the directory names and file names on the Data image, it appears that the deleted documents include discovery materials produced in the Mondona Rafizadeh bankruptcy case, accounting data, backups of data from Flash Vos, Inc. (a company owned and controlled by Counter-Defendant Schumann Rafizadeh, which was also the incorporator of SFE), and a backup of the complete Predatorix web site.  (*Id.*)  According to David Cowen, an expert retained by ORIX, these files were deleted from the source device for the Data image on June 3, 2007 and June 6, 2007.  (*Id.*)  Those dates are, respectively, two days after Mr. Rosen requested a replacement copy for the Arjmandi DVD and one day before Arjmandi produced the First Arjmandi Hard Drive.  While, Mr. Rosen, in his initial expert report, found that about 74,000 files appeared to be deleted on or about May 2, 2007, when asked in a subsequent e-mail on what date the 82,000 files were deleted, Mr. Rosen responded that they were deleted on June 3, 2007 and June 6, 2007.  (Def.'s Reply Mot. Sanctions and Contempt at Ex. 1-F.)  Regardless of which date the files were actually deleted, the Court finds that these actions were taken intentionally and in bad faith.

From these facts, the Court finds Arjmandi was deciding for himself what he deemed should be imaged and was discarding and destroying everything else.  The existence of: (1) more than 42,000 files including the word "ORIX" in their fully qualified path name or file name; (2) discovery materials produced in the Mondona Rafizadeh bankruptcy case; (3) accounting data; (4) backups of data from Flash Vos, Inc.; (5) and a backup of the complete Predatorix web site has been established.  This proves that there is a substantial likelihood that more material and relevant

documents exist, or did exist at one point, and that Arjmandi should have maintained them.  The substantial likelihood that material and relevant documents were included in that mass deletion is something this Court cannot and will not overlook.  The deleted files were not "wiped," as Arjmandi had used Window Washer to do with the System image.  Instead, Arjmandi chose to create and produce only a "sparse" image of the source drive for the Data image, which omitted all unallocated sectors of the source drive, where any data for the deleted files would be located.

The Court finds that Arjmandi intentionally created and produced a sparse image of the source device for the Data image in order to prevent Defendants from gaining access to any deleted files residing on the unallocated portion of the source device.  The Court further finds that Arjmandi took this action deliberately and in bad faith, not from any inability to comply.  Because the directory names and file names for the deleted files are included on the Data image's master file table system, it is still possible to determine the file and directory names for the files that Arjmandi deleted.  Based on the names of the deleted files, it is apparent that many of the documents deleted by Arjmandi would have been relevant and responsive to the claims, defenses, and counterclaims at issue in this case.  Based on the directory and file names of the deleted documents, the circumstances of their deletion from the source device for the Data image, and the circumstances of Arjmandi's creation of a sparse image instead of a full image of the source device, a strong inference arises that the deleted files and data included materials that would have harmed SFE's case, would have strengthened Defendants' defenses, and would have supported ORIX's counterclaims as against all Counter-Defendants.

Arjmandi's deletion of data from the source of the Data image substantially prejudiced Defendants' ability to defend themselves in this case because the deleted materials would have been

essential to their case, but are no longer available to Defendants.  Arjmandi's deletion of data from

the source of the Data image substantially prejudices ORIX's ability to prosecute its counterclaims

against the Counter-Defendants because the deleted materials would have been essential to its case,

but are no longer available to ORIX.

<u>The Claimed Backups</u>

On August 22, 2007, Arjmandi executed a declaration in which he claimed to believe that

the data files identified as having been deleted from the source of the Data image have been archived

and are available for review.  (Pl.'s Resp. Motion Sanction and Contempt for Intentional Spoliation

of Evidence, Ex. 1 at 3.)  Mr. Arjmandi stated that these archived files were contained on a DVD.

(*Id.*)  It was later determined that the files were contained on six DVDs.  Defendants requested that

Arjmandi produce the six original DVDs that contained the archived files to Rosen.  (Def.'s Reply

to Mot. Sanctions and Contempt at  Ex. 1-A–1-D.) Production of the six original DVDs versus a

copy was important, as a copy would not include important metadata, including burn dates, source

identifiers, and the program used to burn the archives.  Arjmandi refused to produce the six DVDs.

Instead, on August 30, 2007, Arjmandi produced another hard drive (the "Third Arjmandi

Hard Drive") to Mr. Rosen.  (*Id.* at Ex. 1-G.)  The Third Arjmandi Hard Drive purported to contain

the contents of six DVDs containing the backups described in Arjmandi's August 22 declaration.

The Third Arjmandi Hard Drive contained numerous unique files; it did not contain all of the files

that had been deleted from the source device for the Data image.  (*Id.*)

On September 5, 2007, the Court held a telephone conference with the parties regarding the

Third Arjmandi Hard Drive and the need for Arjmandi to produce the original DVDs containing the

backups described in Arjmandi's August 22 declaration to Mr. Rosen.  During this conference,

13

Arjmandi's counsel represented to this Court that this was unnecessary because Arjmandi already provided Mr. Rosen images of all the documents that had been copied from the hard drive, which included all the ORIX documents.  (Tr. Telephone Conference, September 5, 2007, at 9.)

On September 5, 2007, the Court ordered Arjmandi to submit the DVDs containing the original backups that had been copied onto the Third Arjmandi Hard Drive.  (*Id.* at 11.)  Arjmandi thereafter submitted six DVDs to the Court so that Mr. Rosen could inspect them in chambers.  On October 16, 2007, Mr. Rosen conducted his in-chambers inspection of the six DVDs. (Supplemental Computer Data Analysis Report at 1.)  The Third Arjmandi Hard Drive was not an exact copy of the six DVDs.  For example, while the Third Arjmandi Hard Drive contained approximately 43,371 unique files, the six DVDs contained approximately 12,842 unique files. (*See id.* at 1–2.)  The six DVDs also contained different files that were not present on the Third Arjmandi Hard Drive.  (*See id.* at 2.)

The six DVDs were created on March 22, 2007, more than a month before the second large set of subsequently-deleted files was copied (on May 2, 2007) onto the source device for the Data image.  (*Id.* at 1.)  Thus, the six DVDs could never have been a backup of the files Arjmandi deleted from the source of the Data image on June 3, 2007 and June 6, 2007.

The six DVDs were created with a program called "Nero."  (*Id.*)  However, the System image indicated that Nero had never been installed on Arjmandi's computer.  Thus, the Court finds that the six DVDs could never have been a backup of the files Arjmandi deleted from the source of the Data image on June 3, 2007 and June 6, 2007, and that Arjmandi did not create the six DVDs from the same source that produced the System and Data images.

Mr. Rosen attempted to determine how many of the files that were deleted from the Data

14

image appeared to be present on the Third Arjmandi Hard Drive and/or the six DVDs.  (*Id.* at 2.)

By comparing the file names and sizes on both images, Mr. Rosen was able to determine that

approximately 14,000 files remained unaccounted for.  (*Id.*)  Even though Mr. Rosen was able to

match file names and sizes on the Third Arjmandi Hard Drive and the six DVDs with some of the

files deleted from the Data image, it is impossible to know whether the deleted documents are the

same as the ones appearing on the Third Arjmandi Hard Drive or the six DVDs.  Because Arjmandi

deleted those files shortly before creating the Data image, it is impossible to compare the documents

to determine whether they are the same or whether they had been modified.

It is unclear what the sources were for the data contained on the Third Arjmandi Hard Drive

and the six DVDs.  Nevertheless, it is clear that the Third Arjmandi Hard Drive and the six DVDs

are not true backups of the files Arjmandi deleted from the source device for the Data image on June

3 and June 6, 2007.  The Court, therefore, finds that Arjmandi's declaration is false, and that the

deleted files identified by Mr. Rosen from the Data image were not archived as Arjmandi had

claimed.  The Court further finds that even though Mr. Rosen was able to eventually produce some

documents, they were only produced once Arjmandi's deception was revealed.  Arjmandi did not

voluntarily produce these materials.

The Court finds that Arjmandi's declaration and the representations to the Court were in bad

faith, and for the purpose of attempting to cover up Arjmandi's intentional deletion of materials from

the source device from which the Data image was created, not from any inability to comply.  The

Court further finds that even if Arjmandi had been able to produce files from other sources that

matched each of the deleted files by name and size, such production would have been incapable of

negating the harm caused to the Defendants by his intentional deletion of the materials from the

source of the Data image.  By deleting those documents and then failing to ever produce a full and complete Data image instead of only a sparse image, Arjmandi has permanently and intentionally prevented Defendants and this Court from knowing precisely what documents were located on his hard drive, where they came from, and how they may have been modified.  In addition, the deletion and offloading of files from Arjmandi's hard drive effectively destroyed the original metadata associated with those files, which would have provided relevant and material information regarding the author of those files and their creation dates, which relates directly to what SFE's principals understood about the Louisiana judgment, the terms of the Pooling and Servicing Agreements for the MLMI and FULBBA certificates, the content of Predatorix, and other relevant matters, as well as when they obtained such information.

The Court further finds Arjmandi's statement that he could produce the majority of the unaccounted for files not credible, given the history the Court has had with Arjmandi and his repeated misrepresentations about his archiving of files and his continued, systematic violation of the Court's preservation order.  In any event, any production at this point is too late since the deadline for the completion of discovery was in June 2007 and all witnesses have been deposed. Arjmandi failed to voluntarily produce these files during discovery and even now, he has failed to tender any of these files to the Court, despite his representations that he has done so.

### D.      Cyrus Rafizadeh's Spoliation

#### Attempt to Render Hard Drive Inoperable

On June 1, 2007, Mr. Rosen informed the parties that he had determined the purported image of Rafizadeh's hard drive was actually a damaged laptop hard drive (the "Rafizadeh Hard Drive"). (Def.'s App. Mot. Sanctions at Ex. C, App. 108.)   Rafizadeh claimed the hard drive was in working

order when he tendered it to the Court, but it proved not to be operational when Mr. Rosen received it.  (Pl.'s Resp. Mot. Sanction and Contempt, Ex. 3 at 1.)  Mr. Rosen was not able to render the Rafizadeh Hard Drive operational until July 3, 2007, when he replaced the controller card.  (Def.'s App. Mot. Sanctions at Ex. C, App. 108.)

After Mr. Rosen replaced the controller card on the Rafizadeh Hard Drive, he found that the partition table did not exist on the drive.  (Tr. Hr'g Spoilation Mots. 163–64.)  The partition table serves as a "table of contents" for the hard drive, in that it tells the computer what parts of the disk are in use and which of them are able to boot.  (*Id.*)  Although Rafizadeh claimed that he has placed a note in the box with the Rafizadeh Hard Drive containing the information needed to reconstruct the partition table, no such note was in the box when it was received by Mr. Rosen.  (*Id.*)  Mr. Rosen was subsequently able, on his own initiative and without the assistance of Rafizadeh, to recreate the partition table on the Rafizadeh Hard Drive and thereby gain access to all data contained on the Rafizadeh Hard Drive.  (*Id.*)

The only reasonable explanation for why the Rafizadeh Hard Drive was inoperable when it was received by Mr. Rosen is that it was damaged by Rafizadeh before it was submitted to the Court.  The Court finds that Rafizadeh acted intentionally and in bad faith by erasing the partition table from the Rafizadeh Hard Drive and attempting to render it inoperable, in an unsuccessful effort to prevent the Defendants from gaining access to the data contained on the hard drive, and not from any inability to comply.

<u>Intentional Deletion of Predatorix Documents</u>

The Predatorix web site is hosted by a company called EHostOne.  In response to Defendants' subpoena, EHostOne captured all of the directories on their system to which Rafizadeh

had access through his account and made it available for inspection on September 14, 2007.  In order to conserve storage space, EHostOne normally keeps only one day of access logs for the web sites it hosts, including Predatorix.  The access logs would have shown who was accessing Predatorix at any particular time, what they accessed, and where the accessed data came from.  Documents reflecting such information were responsive to Defendants' discovery requests, but Rafizadeh took no steps to preserve or produce the daily access logs.

The Predatorix web site allows visitors to send email to Rafizadeh at the address cyrus@predatorix.com.  Earlier in this case, Rafizadeh produced some documents showing persons contacting him through his Predatorix email address.  However, the only emails contained in the EHostOne production consisted of "spam" dating back to 2006 and a single email submitted through a form on the web site dated shortly before the EHostOne production.  Predatorix also includes a portion of the web site to which access is password-restricted.  However, no documents remained on the password-restricted directory by the time of the EHostOne production, even though the deleted backup of Predatorix identified from Arjmandi's Data image established that approximately twelve files had been in that restricted directory at one time.  Rafizadeh has never voluntarily produced these materials.

Based on the foregoing, the Court finds that Rafizadeh intentionally deleted emails and documents from the Predatorix web site in order to prevent the Defendants from gaining access to those materials.  The Court further finds that Rafizadeh deleted those materials deliberately and in bad faith, not from any inability to comply.  The statements published on the Predatorix web site, the allegations contained on that web site, the authors of the statements and allegations on the web site, and the responsibility for its administration are all central issues in this case.

Based on the circumstances of Rafizadeh's deletion of emails and documents from the Predatorix site prior to their production by EHostOne, a strong inference arises that the deleted materials that would have harmed SFE's case, would have strengthened Defendants' defenses, and would have supported ORIX's counterclaims against all Counter-Defendants.  The Court finds that the emails and documents Rafizadeh deleted from the Predatorix web site included materials that would have harmed SFE's case, would have strengthened Defendants' defenses, and would have supported ORIX's counterclaims against all Counter-Defendants.

Rafizadeh's deletion of emails and documents from the Predatorix web site substantially prejudiced Defendants' ability to defend themselves in this case because the deleted materials would have been essential to their case, but are no longer available to Defendants.  Rafizadeh's deletion of emails and documents from the Predatorix web site substantially prejudices ORIX's ability to prosecute its counterclaims against the Counter-Defendants because the deleted materials would have been essential to its case, but are no longer available to ORIX.

### E.    The Spoliation Is Attributable to SFE

When Arjmandi undertook the deletion and destruction of materials as described above, he was acting on behalf of both himself and SFE.  When Rafizadeh undertook the deletion and destruction of materials as described above, he was acting on behalf of both himself and SFE.

### F.    The Spoliation Hearing

On December 7, 2007, the Court conducted an approximately four-hour hearing on this matter.  Arjmandi, Rafizadeh, and SFE were given a full opportunity to present evidence and argument.  Arjmandi appeared and testified at the hearing.  Arjmandi also presented testimony via a declaration.  The Court finds that Arjmandi is not a credible witness.  Rafizadeh failed to appear

or offer any testimony at the hearing.  Rafizadeh did, however, present testimony via a declaration. The Court finds that Rafizadeh is not a credible witness.

David Cowen, a computer forensics expert, appeared and testified at the hearing on behalf of the ORIX Defendants.  The Court finds Mr. Cowen to be a credible and reliable witness.  The ORIX Defendants also presented evidence in the form of the reports of Andrew Rosen, also a computer forensics expert.

Arjmandi, Rafizadeh, and SFE were represented by counsel at the hearing and neither Arjmandi, Rafizadeh, or SFE requested a continuance to prepare for the hearing or any need for additional time.  The Court finds that Arjmandi, Rafizadeh, and SFE had sufficient opportunity to be heard on this matter.

The Court has considered the parties' arguments and pleadings regarding sanctions, the evidence presented at the hearing, and the record in its entirety and finds that severe sanctions are warranted.

## CONCLUSIONS OF LAW

After considering all the evidence presented, the Court concludes that Arjmandi, Rafizadeh, and SFE willfully and in bad faith refused to comply with the Preservation Order.  Pursuant to Federal Rule of Civil Procedure 37(b)(2), the Court may impose "just" sanctions on parties who disobey a discovery order.  *FDIC v. Conner*, 20 F.3d 1376, 1380 (5th Cir. 1994).  The Court concludes that sanctions are warranted in this case, based on Arjmandi and Rafizadeh's violation of this Court's order to preserve their hard drives as evidence, as well as Arjmandi, Rafizadeh, and SFE's intentional spoliation of evidence.

"The Fifth Circuit permits an adverse inference against the destroyer of evidence only upon

a showing of 'bad faith' or 'bad conduct.'" *Condrey v. SunTrust Bank of Georgia*, 431 F.3d 191, 203 (5th Cir. 2005) (citing *King v. Ill. Cent. R.R.*, 337 F.3d 550, 556 (5th Cir. 2003)).   The test is whether the court, "from the fact that a party has destroyed evidence," could draw an inference "that the party did so in bad faith." *S.C. Johnson & Son, Inc. v. Louisville & Nashville Railroad Co.*, 695 F.2d 253, 258–59 (7th Cir. 1982).   If a court finds that both conditions precedent, evidence destruction and bad faith, are met, it may then infer that the evidence would be unfavorable to the destroying party if introduced in court.   *Eaton Corp. v. Appliance Valves Corp.*, 790 F.2d 874, 878 (Fed. Cir. 1986).

Arjmandi's and Rafizadeh's failure to preserve their hard drives, as ordered by this Court, was done willfully and in bad faith, not from any inability to comply.  Their knowing violation of the Preservation Order and their many months of incomplete and inadequate production evince a clear record of delay and contumacious conduct.  Arjmandi, Rafizadeh, and SFE willfully abused the judicial process, and their conduct in this case constitutes bad faith.  Arjmandi, Rafizadeh, and SFE's discrepancies and explanations cannot be accounted for by innocence or explained by an inability to comply.  The only logical explanation for their conduct is that Arjmandi, Rafizadeh, and SFE were being willfully deceptive in an attempt to cover-up the truth.

The ongoing concealment and conduct of Arjmandi, Rafizadeh, and SFE has adversely impacted Defendants' and Counter-Plaintiffs' ability to defend against SFE's claims as well as to prosecute their claims.  It has hampered Defendants in preparing and presenting summary judgment motions, in developing the facts for trial, and has created an impasse for potential settlement negotiations.  This concealment and conduct was extremely prejudicial to Defendants because the destroyed documents were relevant to Defendants defenses to SFE's claims as well as ORIX's

counterclaims. Moreover, the destruction and deception took place for over a year, and Defendants continued to incur great expense in defending the suit and prosecuting their claims. The true extent and depth of Arjmandi, Rafizadeh, and SFE's destruction and concealment efforts only came to light after the close of discovery, mere weeks before trial was scheduled.

Defendants' preparation for trial was substantially prejudiced by Arjmandi, Rafizadeh, and SFE's conduct. The evidence Arjmandi and Rafizadeh deleted is relevant to the Defendants' defenses and ORIX's counterclaims. That evidence, including the metadata from deleted files and the files that were wiped from the hard drive, has been lost forever. Defendants are therefore substantially prejudiced in their trial preparation, both as to SFE's claims against Defendants and as to ORIX's claims against Counter-Defendants.

The actions in this case are plainly the work of the parties themselves – Arjmandi, Rafizadeh, and SFE - and not their attorneys. Having reviewed all relevant factors and the Findings of Fact, the Court concludes that an adverse inference instruction as a sanction for the destruction of evidence is appropriate in this case. Summary judgment has now been granted against Plaintiff on all of its claims against Defendants. However, ORIX's counterclaims remain pending before the Court. This Court recommends that upon trial of ORIX's counterclaims, the jury be informed of the Court's findings regarding Arjmandi, Rafizadeh, and SFE's spoliation, and be instructed that they may consider that spoliation as part of their deliberations on ORIX's counterclaims.

The Court also awards Defendants all of their fees and costs incurred in connection with this motion, including reasonable and necessary attorney fees. Monetary sanctions are appropriate in this case under the Federal Rules and this Court's inherent powers. There is no substantial justification for Arjmandi, Rafizadeh, and SFE's conduct and destruction of evidence. As found

above, the forever destroyed and lost evidence was directly relevant to central claims, issues, and defenses in this case, and was highly damaging to Arjmandi, Rafizadeh, and SFE's case. Therefore, it is appropriate to award monetary sanctions equal to the attorneys' fees and actual costs incurred by Defendants in connection with this motion. Arjmandi, Rafizadeh, and SFE are jointly and severally liable for these monetary sanctions. Their discovery abuse is an egregious case of bad faith conduct, and these sanctions against Arjmandi, Rafizadeh, and SFE's are appropriate in light of their abuse of the judicial process. Defendants shall file affidavits and attachments substantiating their attorneys' fees and actual costs within ten days of the date of this order, and the Court shall thereafter award the monetary sanction by separate order.

## CONCLUSION

For the reasons stated above, ORIX Defendants' Motion for Sanctions and Contempt Against Plaintiff and Counter-Defendant Super Future Equities, Inc. and Counter-Defendant Thomas Arjmandi and Cyrus Rafizadeh for Intentional Spoliation of Evidence (doc. 319), ORIX Defendants' Supplemental Motion for Contempt and Sanctions Against Plaintiff and Counter-Defendant Super Future Equities, Inc. and Counter-Defendants Thomas Arjmandi and Cyrus Rafizadeh for Intentional Spoliation of Electronic Evidence (doc. 333), and Defendant Wells Fargo's Motion to Join ORIX Defendants' Motion for Sanctions and Contempt (doc. 354) are **GRANTED**. Arjmandi, Rafizadeh, and SFE are **ORDERED** to pay Defendants' and Counter-Plaintiffs' costs and attorneys' fees incurred in connection to this motion. Defendants and Counter-Plaintiffs are **ORDERED** to file a notice of these costs and declaration of fees within ten (10) days of the issuance of this Order. The Court will determine the exact amount of the monetary sanctions and enter a separate order. Moreover, the Court recommends to the District Court that upon trial of ORIX and Wells Fargo's

counterclaims, the jury be informed of the Court's findings regarding Arjmandi, Rafizadeh, and

SFE's spoliation, and be instructed that they may consider that spoliation as part of their

deliberations on ORIX's counterclaims.

**SO ORDERED.**  Signed, February 4, 2008.

_____

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
<u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>**

The United States District Clerk shall serve a true copy of these findings, conclusions, and

recommendation on the parties.  Pursuant to Title 28, United States Code, Section 636(b)(1), any

party who desires to object to these findings, conclusions, and recommendation must serve and file

written objections within ten days after being served with a copy.  A party filing objections must

specifically identify those findings, conclusions, or recommendation to which objections are being

made.  The District Court need not consider frivolous, conclusory or general objections.  A party's

failure to file such written objections to these proposed findings, conclusions, and recommendation

shall bar that party from a *de novo* determination by the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150 (1985).   Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).