UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SUPER FUTURE EQUITIES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | |
| | § | |
| WELLS FARGO BANK MINNESOTA, | § | |
| N.A., *as Trustee of the Certificate Holders* | § | CIVIL ACTION NO. 3: 06-CV-0271-B |
| *of Merrill Lynch Mortgage Investors* | § | |
| *CMBS Pass Through Certificates Series* | § | |
| *1999-C1*, ORIX CAPITAL MARKETS, | § | |
| LLC, ORIX CAPITAL MARKETS | § | |
| PARTNERSHIP, JOHN DINAN, | § | |
| MICHAEL WURST, CLIFFORD | § | |
| WEINER, and JAMES R. THOMPSON, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM ORDER

Super Future Equities, Inc. (individually referred to as "Super Future Equities") filed this

action against Wells Fargo Bank Minnesota, N.A. ("Wells Fargo"); ORIX Capital Markets, LLC

("Orix" or "Orix Capital"); ORIX USA Corporation ("Orix USA"); John Dinan; Michael F. Wurst;

Clifford Weiner; James R. Thompson; and ORIX Capital Markets Partnership ("Orix Partnership")[1],

claiming breach of fiduciary duty, negligence, gross negligence, breach of contract, and civil

violations of Racketeer Influenced and Corrupt Organizations Act ("RICO"). Orix Capital filed a

counterclaim against Super Future Equities, Schumann Rafizadeh, Cyrus Rafizadeh, D.R.[2], Houman

---

[1] On August 2, 2007, the Court dismissed Orix Capital Markets Partnership from the case
pursuant to Federal Rule of Civil Procedure 4(m) (doc. 309).

[2] Counter-Defendant D.R. is a minor child. According to this Court's Privacy Notice, available at

1

Thomas Arjmandi, and Keon Michael Arjmandi (collectively referred to as "SFE" or "Counter-Defendants" unless otherwise denoted) alleging libel *per se*, business disparagement, tortious interference with contractual relationships, common law conspiracy, and copyright infringement. On December 14, 2007, this Court granted the Defendants' Motion for Summary Judgment on all of Super Future Equities' claims (doc. 498). Presently before the Court is Counter-Defendants' Motion for Summary Judgment (doc. 311) on Orix's counterclaims and Orix Capital Markets, LLC's Objections and Motion to Strike Counter-Defendant's Summary Judgment Evidence (doc. 393). For the reasons that follow, the Court **GRANTS** the Counter-Defendants' Motion for Summary Judgment **(doc. 311)** as to Orix's counterclaims for business disparagement, tortious interference with contractual relationships, and copyright infringement. The Court **GRANTS** SFE's Motion for Summary Judgment as to Orix's counterclaims for libel *per se* **and conspiracy against D.R. but DENIES** the Motion as to libel *per se* and conspiracy with respect to all other Counter-Defendants. The Court **DENIES as Moot** Orix's Motion to Strike Counter-Defendant's Summary Judgment Evidence **(doc. 393)**.

## I. Background

As an initial matter, this lawsuit involves two Commercial Mortgage Backed Securities Trusts: (1) the Trust for the Certificate holders of the Merrill Lynch Mortgage Investors, Inc. Mortgage Pass-Through Certificates, Series 1999-C1 ("MLMI Trust") and (2) the Trust for the Certificate holders of the First Union-Lehman Brothers Bank of America Commercial Mortgage Pass-Through Certificate Series 1998-C2 ("FULBBA Trust") (collectively "the Trusts"). Super

http://www.txnd.uscourts.gov/pdf/TXNprivnot.pdf, minors should be designated by their initials.

Future Equities is a certificate holder of the Trusts; Orix is the Master and Special Servicer of the Trusts; and Wells Fargo is the Trustee for the Trusts. [3]

By way of background, the parties' dispute began in 2001 when Cyrus II Partnership - an entity in which Schumann ("Schumann") and his wife Mondona Rafizadeh have an ownership interest -executed a promissory note on a property called "Arlington Apartments." (Orix Capital Markets, LLC's Am. Countercl. ("Am. Countercl.") at 3). ORIX, the master and special servicer of the MLMI Trust that held the loan, brought suit in Louisiana to foreclose on the Arlington Apartments. (*Id.* at 3-4). In December 2004, Orix obtained a fraud judgment in excess of $10 million against Cyrus II, Mondona Rafizadeh, and Bahar Development, Inc. (*Id.* at 4; Orix's Br. in Supp. of its Mot. for Summ. J. ("Orix's Br.") 5). On December 1, 2004, Schumann created Super Future Equities, naming himself as President and sole member of the Board of Directors. (Orix's Br. 6). Eventually, Schumann's nephew, Thomas Arjmandi ("Thomas"), became Super Future Equities' President, and Schumann's son, Cyrus Rafizadeh ("Cyrus") became the Secretary and Treasurer. (*Id.*). Thomas and Cyrus as well as Schumann's son, D.R., and Schumann's nephew, Keon Arjmandi ("Keon"), were the four shareholders of Super Future Equities. (*Id.* at 7).[4] Super Future Equities acquired funds from Schumann and other entities he controlled. (*Id.*). Super Future Equities obtained certificates in the FULBBA Trust in April 2005 and in the MLMI Trust in July 2005. (*Id.* at 9).

---

[3]For more detailed background information on Commercial Mortgage Backed Securities and Super Future Equities' claims, see the Court's Order of December 14, 2007 (doc. 498).

[4]Schumann's sons were minors at the time, and his nephews were both younger than twenty. (Orix's Br. 6-7).

On February 13, 2006, Super Future Equities filed this lawsuit as a purported class action[5] against Orix, Wells Fargo, Orix USA, John Dinan, Michael F. Wurst, Clifford Weiner, James R. Thompson, and Orix Partnership relating to their duties as Servicer, Special Servicer, and Trustee of the Trusts[6]. In its most recent complaint, filed September 11, 2006, Super Future Equities asserted causes of action against the Defendants for breach of fiduciary duty, breach of contract, RICO violations, negligence, and gross negligence.

On February 13, 2006, the same day that Super Future Equities filed this lawsuit, Cyrus created the website at www.predatorix.com ("Predatorix"). (Orix's Br. 9). On April 24, 2006, Orix counterclaimed against Super Future Equities, Schumann Rafizadeh, Cyrus Rafizadeh, D.R., Houman Thomas Arjmandi, and Keon Michael Arjmandi asserting claims of libel *per se*, business disparagement, tortious interference with contractual relationships, and common law conspiracy. Thereafter, Orix filed an amended counterclaim asserting claims for libel *per se*, business disparagement, tortious interference with contractual relationships, common law conspiracy, and copyright infringement. Orix alleges that SFE conspired to create Super Future Equities and to create Predatorix. (Am. Countercl. at 42, 122). Orix claims that Predatorix is used to bolster Super Future Equities' claims, make defamatory and disparaging statements, interfere with Orix's contracts, and infringe on Orix's copyright. (*Id.*).

On December 14, 2007, this Court granted the Defendants' Motions for Summary Judgment on all of Super Future Equities' claims (doc. 498). SFE filed a Motion for Summary Judgment on

---

[5]The Court has since struck Super Future Equities' class allegations.

[6]Orix claims that SFE filed this lawsuit against Orix and Wells Fargo in retaliation for the Louisiana fraud judgment against Mondona Rafizadeh. (Orix's Br. 5).

Orix's counterclaims on August 3, 2007 (doc. 311). Orix responded on August 23, 2007 (doc. 389) and also filed Objections and Motion to Strike SFE's Summary Judgment Evidence (doc. 393). SFE replied on September 7, 2007 (doc. 441). SFE's motion, being fully briefed, is now ripe for adjudication.

## II. Analysis

### A. Summary Judgment Legal Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes about material facts will preclude the granting of summary judgment. *Id.*

The burden is on the summary judgment movant to prove that no genuine issue of material fact exists. *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990). If the non-movant bears the burden of proof at trial, the summary judgment movant need not support its motion with evidence negating the non-movant's case. Rather, the movant may satisfy its burden by pointing to the absence of evidence to support the non-movant's case. *Id.*; *Little*, 37 F.3d at 1075.

Once the movant has met its burden, the non-movant must show that summary judgment is not appropriate. *Little*, 37 F.3d at 1075 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "This burden is not satisfied with 'some metaphysical doubt as to material facts,' . . . by 'conclusory allegations,' . . . by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The non-moving party

must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita*, 475 U.S. at 587 (emphasis in original) (quoting FED. R. CIV. P. 56(e)). To determine whether a genuine issue exists for trial, the court must view all of the evidence in the light most favorable to the non-movant, and the evidence must be sufficient such that a reasonable jury could return a verdict for the non-movant. *Munoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000); *Anderson*, 477 U.S. at 248. The Court now turns to SFE's Motion for Summary Judgment on Orix's counterclaim for libel *per se*.

**B.      Libel *Per Se***

In its amended counterclaim, Orix contends that the following statements on Predatorix constitute libel *per se*:

- Statement # 1: "ORIX is determined to recover. So determined in fact, that they are willing to spend more in the pursuit of recovery, than the recovery itself . . .ORIX spent over $22M to recover $19.4M, smooth. Very smooth." (March 14, 2006)

- Statement #2: "This magic tricks [sic] works [sic] by taking REMIC Trusts [sic] money by cooking up books to make it look like the Trusts [sic] owes 'P&I Advances' to Servicers and Trustee"; "In effect, every time Orix [sic] takes money out of one pocket of Orix [sic] and puts it in the other pocket of Orix [sic] for Orix [sic], the Trust is obligated to refill the empty pocket plus interests [sic] for Orix [sic]. With this tricks [sic] Orix [sic] can indefinitely siphon all the money it wants from the Trust. Orix [sic] pays out once, collects twice, thus doubling its money. It is like smoke and mirrors trick!"; "Now, the application of special effects can significantly improve and multiply the disappeared funds. For example, taking the litigation expenses from one lawsuit and applying it again in another lawsuit! This

improvement to this trick can actually make a lot of funds disappear from Trusts and Borrower/Guarantor's equity, tax-free, compliments of REMIC regulations diversions! This is another smoke and mirror trick for complex disappearing act"; and "These magic tricks works [sic] by manipulating the distribution reports and 1066 Tax return form and the SEC disclosure violations. (Disabling codes and regulations intended to prevent such illegal activities.)" (March 21, 2006)

- Statement #3: A video clip that Orix claims "appears to show Mr. Dinan explaining how ORIX Capital is able to recover certain advances twice, when in reality, Mr. Dinan is explaining how ORIX Capital receives funds from the trusts when ORIX Capital is acting as Special or Master Servicer when it also is first-loss certificateholder." (March 23, 2006)

- Statement #4: "This website is dedicated to all the victims of Wells Fargo & ORIX's predatory lending and discriminatory practices including;

1) All borrowers and guarantors who lost assets, were stripped of equity, incurred physical and emotional injuries, or lost their lives upon loss of their life-time earnings.

2) All investors who have lost their pension funds and retirement investments in CMBS bonds (certificateholders).

3) All tenants of the seized commercial and residential properties who suffered neglect and mismanagement at the hands of Receiver/Keepers of the seized properties due to health and safety violations, fires, shootings, theft or drowning.

Especially David Pena of Empire Center Dallas, who died of a heart attack after his property was seized and Justin & Daren Ruffin, twin brothers that drowned in a seized apartment's pool." (March 30, 2006)

- Statement #5: "Today I have added a new Pick-of-the-Week as well as a new Lie by ORIX, both are very interesting." This commentary is linked to another page, with the heading "ORIX flat out lied,"that includes excerpts from documents that are allegedly out of context. (May 30, 2006)

- Statement #6: "I have also added an [sic] scan of a USA Today article where Fannie Mae was fined $400M for similar practices of Wells Fargo and Orix [sic]." (June 19, 2006)

- Statement #7: On a page entitled "ORIX v. LaSalle and Nomura Securities," there are documents posted under the heading, "Below are documents relating to the suit which was won by Nomura Securities." (June 19, 2006).

(Am. Countercl. 13-23).

SFE moves for summary judgment on Orix's libel *per se* claim arguing (1) there is no evidence that any SFE Counter-Defendant other than Cyrus Rafizadeh actually published any statements of fact on Predatorix; (2) the statements by their very nature are not actionable; (3) there is no evidence that the statements were false; and (4) there is no evidence that SFE acted with actual malice. (Counter-Defendants' Br. in Supp. of their Mot. for Summ. J. ("SFE's Br.") 7-11).

A plaintiff must establish the following elements to maintain a defamation action: (1) the defendant published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting with either actual malice if the plaintiff was a public official or public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement. *WFAA TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998) (citations omitted).

1.    *SFE Counter-Defendants other than Cyrus Rafizadeh*

SFE argues that there is no evidence that any of the Counter-Defendants other than Cyrus

Rafizadeh published any statements on Predatorix and that the libel *per se* claim should be dismissed against these other SFE Counter-Defendants. (SFE's Br. 7-8). In response, ORIX presented evidence that Thomas Arjmandi registered the Predatorix website; selected the user name and password; listed his e-mail address, telephone number, and work address; and is still listed as the registrant, administrator, technical contact, and billing contact for the website. (Orix's Br. 9-10). ORIX also presented evidence that Keon Arjmandi was billed and paid for the website and Schumann Rafizadeh provided his MasterCard number to pay for an upgrade to the website. (*Id.* at 10). Finally, Orix presented evidence from its expert forensic computer specialist that Schumann, Thomas, and Keon helped create the documents that were published on the website. (*Id.* at 12). Orix, however, has not presented any evidence to show that D.R. has participated in the creation or the publication of information on Predatorix. The Court concludes that Orix has not created a genuine issue of material fact as to whether D.R. has published information on Predatorix. On the other hand, Orix's evidence is sufficient to raise a genuine issue of material fact as to whether the other Counter-Defendants published information on Predatorix. Accordingly, the Court **GRANTS** SFE's Motion for Summary Judgment with regard to its libel *per se* claim against D.R. and will now consider SFE's other arguments regarding libel *per se* with respect to the remaining SFE Counter-Defendants.

       2.     *Objectively Verifiable Facts*

SFE claims that the statements were non-actionable satire, parody, or opinion.[7] (SFE's Br. 9).

---

[7] The Court notes and SFE points out that Orix did not respond to SFE's argument that the postings on Predatorix are opinion, satire, or parody. (SFE's Reply 6-7). However, the Court has enough evidence before it – printouts from the website – to determine whether the postings are opinion, satire, or parody. Because each party only submitted a few pages of the Predatorix website in their appendices, the Court has

The Court will first address the contention that the statements are opinion and then turn to whether they are satire or parody.

a.    *Opinion*

SFE contends that the statements on Predatorix constitute protected opinion. "An essential element of defamation is that the alleged defamatory statement be a statement of fact rather than opinion. Expressions of opinion may be derogatory and disparaging; nevertheless they are protected by the First Amendment of the United States Constitution and by article I, section 8 of the Texas Constitution. The question of whether a statement is an assertion of fact or opinion is a question of law." *Shaw v. Palmer*, 197 S.W.3d 854, 857 (Tex. App.-Dallas 2006, *pet denied*) (citations omitted). Whether statements are fact or opinion depends on "'their verifiability and the context in which they were made.'" *Bentley v. Bunton*, 94 S.W.3d 561, 583 (Tex. 2003). The analysis depends on a "reasonable person's perception of the entirety of the publication and not merely on individual statements." *Id.* at 579 (quoting *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 115 (Tex. 2000)).

In *Bentley v. Bunton*, the Supreme Court of Texas held that statements on a call-in television talk show that accused a judge of being corrupt were statements of fact as opposed to protected opinions. *Id.* at 566-67. The Court found it significant that the talk show host stated that his accusations were based on fact, that he claimed to have investigated the alleged incidents demonstrating corruption, that he cited specific cases, and that he pointed to court records and public documents. *Id.* at 583. While the host often stated that it was his opinion that the judge was

_____

examined the Predatorix webpage printouts submitted in the Exhibits to Orix's Application for Prelim. Inj. (doc. 43) in order to more fully understand the contents and context of the Predatorix website. *See Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 494 F. Supp. 1161, 1168 (E.D. Pa. 1980) ("[T]he choice of materials to be considered in conjunction with a summary judgment motion is within the discretion of the trial judge.").

corrupt, the Court found that this was not determinative:

Simply couching such statements in terms of opinion does not dispel these implications; and the statement, "In my opinion Jones is a liar," can cause as much damage to reputation as the statement, "Jones is a liar." As Judge Friendly aptly stated: "[It] would be destructive of the law of libel if a writer could escape liability for accusations of [defamatory conduct] simply by using, explicitly or implicitly, the words 'I think.'" *See Cianci* [*v. New Times Publ'g Co.*, 639 F.2d 54, 64 (2d Cir., 1980)]. It is worthy of note that at common law, even the privilege of fair comment did not extend to "false statement of fact, whether it was expressly stated or implied from an expression of opinion." Restatement (Second) of Torts, § 566, Comment a (1977).

*Id.* at 584 (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-19 (1990)).

A couple of factually similar cases from other jurisdictions provide further guidance. *Ballard* involved a website subtitled "When telling the truth hurts[:] Dedicated to Exposing Lies at Naval Air Station, Brunswick." *Ballard v Wagner*, 877 A.2d 1083, 1086 (Me. 2005). The first link entitled "Lie #1[:] LT Ballard's Little Fib" was to a subsequent page discussing Ballard's negotiation of a contract with non-union workers. *Id.* The page contained a quote with the word "lie" handwritten in the margin. *Id.* The second link on the web-site entitled "Lie # 2[:] It's Safe Now" linked the viewer to another page with a quote and the word "lie" written in the margin. *Id.* at 1087. This quote stated that the representative had been informed that all deficiencies had been abated. *Id.* The deficiencies had likely not been repaired but the representative had received a notice indicating that there were no deficiencies. *Id.* The web page did not include this notice. *Id.* The Court held that these statements were not opinions. *Id.*

In *Varian*, two former employees posted derogatory messages about their former employer and its executive employees on Internet bulletin boards. *Varian Med. Sys., Inc. v. Delfino*, 6 Cal. Rptr. 3d 325, 334 (Cal. Ct. App. 2003), *rev'd on other grounds*, 106 P.3d 958 (Cal. 2005). The statements included accusations of lies, hallucinations, mental illness, incompetence, harassment,

discrimination, and stalking. *Id.* The employees also made sexual references implying that one of the employees had sex with her supervisor to obtain her job. *Id.* After the lawsuit was filed, the former employees published a website which provided a narrative of the case. *Id.* The employees also took statements involving the lawsuit out of context. *Id.* For example, in a motion to the court, the plaintiffs' attorney stated, "For example, Defendants often posted messages implying, if not outright stating, that Plaintiff Felch is a female executive who acquired semen stains on her clothes from oral sex with a supervisor, which was supposedly the reason she still had a job, etc." *Id.* at 334-35. Defendants took a portion of this quote and posted a message stating "'Felch is a female executive who acquired semen stains on her clothes from oral sex with a supervisor . . .' was stated by Megan Gray the famous LA lawyer." *Id.* at 335. The Court rejected the Defendants' argument that no one would take an anonymous outrageous posting on an Internet message board as a true statement of fact. *Id.* at 337.

Applying the *Bentley* analysis, which requires the Court to consider verifiability and context, the Court finds that the statements made on Predatorix are verifiable statements of fact as opposed to protected opinions. Regarding statement #1, the amount of money that ORIX spent and the amount of recovery are statements of fact. Statement #2 accuses Orix of engaging in specific behavior. Statement # 3 takes statements made by Dinan out of context to imply a different meaning to them analogous to the out of context quote in *Varian*. Statement # 5, which accuses ORIX of lying and takes statements out of context, is similar to the statements in *Ballard* that were not found to be an opinion. Statement #6 accuses Orix of engaging in behavior similar to Fannie Mae. Finally, regarding statement #7, whether Nomura Securities won or lost the case is an objectively verifiable fact.

The Court also considers the context in which these statements were made. The disclaimer that "This is my private information and opinion" does not transform the statements into opinions. *See Bentley*, 94 S.W.3d at 584; (Ex. O to Application for Prelim. Inj. and Br. in Supp.). Like the plaintiff in *Bentley*, Predatorix accuses Orix of wrongdoings and purports to give factual information about Orix's behavior. The website provides links to court documents, deposition videos, news articles, and court cases. Cyrus also claims to verify the accuracy of the information he posts. (Ex.A to Application for Prelim. Inj. and Br. in Supp. 3 ("I am verifying the accuracy and intend to post it within a few weeks.")). Accordingly, these statements are not protected opinions.

        *b.*      *Satire or Parody*

The Court now considers whether the statements on Predatorix are satire or parody. When analyzing cases of satire or parody, the test is "whether the publication could be reasonably understood as describing actual facts." *New Times, Inc. v. Isaacks*, 146 S.W. 3d 144, 157 (Tex. 2004) (citing *Pring v. Penthouse Int'l Ltd.,* 695 F.2d 438, 442 (10th Cir. 1982)). "The appropriate inquiry is objective. Thus, the question is not whether some actual readers were misled, as they inevitably will be, but whether the hypothetical reasonable reader could be." *Id.* at 157 (citations omitted).

The Court finds that a reasonable person would find that the Predatorix website describes actual facts. It refers to actual court cases and cites several documents for support. As discussed above, it purports to gather factual information to document ORIX's alleged misconduct. Accordingly, it is not satire or parody.

        *3.*      *Public vs. Private Figure*

Before considering SFE's arguments based on falsity and actual malice, the Court must first determine whether Orix is a public or private figure. Whether Orix is a public figure is a question of

constitutional law for the Court to decide, with SFE having the burden of persuasion on the issue. *WFAA TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998) (citations omitted); ROBERT D. SACK, SACK ON DEFAMATION: LIBEL, SLANDER, AND RELATED PROBLEMS § 5.4.1 (citing *Reliance Ins. Co. v. Barron's*, 442 F. Supp. 1341, 1346 (S.D.N.Y. 1977)). Determining whether a corporation is a public or private figure requires a case by case analysis. *Snead v. Redland Aggregates Ltd.*, 998 F.2d 1325, 1329 (5th Cir. 1993). The Fifth Circuit has established a three non-exclusive factor test for determining whether a corporation is a public figure. *Id.* The first factor, "the notoriety of the corporation to the average individual in the relevant geographical area", takes into account the corporation's size and nationality. *Id.* The second factor, the nature of the corporation's business, considers whether the corporation makes or markets consumer goods. *Id.* Finally, the third factor is the frequency and intensity of media scrutiny. *Id.*

In *Snead*, a railroad company filed a lawsuit against Redland and Standard, two English corporations, alleging misappropriation of trade secrets and breach of a confidential relationship. *Id.* at 1328. A few days after filing suit, the railroad company issued a press release accusing Standard and Redland of "international theft," "industrial espionage," and "international piracy." *Id.* Redland and Standard counterclaimed for libel based on this press release. *Id.* The Court concluded that Redland and Standard were not public figures. *Id.* at 1329. Applying the first factor, the Court determined that although these corporations were not small, most Americans would not have heard of them because they were alien corporations. *Id.* As for the second factor, the Court explained that corporations that mine stone and build railroad cars would not ordinarily become household names. *Id.* Finally, applying the third factor, the Court found no evidence that Redland or Standard had received significant past publicity. *Id.* at 1329-30. The Court noted that the press release had been

14

published in several industry publications but found this insufficient to attain public figure status:

> The record does reveal that the press release that is the subject of this suit was reprinted in several industry publications. Although some individuals may be considered public figures in a small geographical community, we decline to extend such reasoning to an *industry*. After all, almost every individual or corporation is well known among some small group of people.

*Id.* at 1330 n.7.

Next the Court considered whether the speech involved a matter of public or private concern, which required analysis of the form, content, and context of the speech. *Id.* at 1330. Considering form, the Court found that the press release was unsolicited and not in response to previous media coverage and that a party cannot turn speech into a matter of public concern by issuing a press release. *Id.* As for content, the railroad company argued that (1) the speech involved a lawsuit and lawsuits are a matter of public concern; (2) international competition and industrial espionage are matters of public concern; and (3) the speech involved matters of special interest to the railroad and construction industry. *Id.* The Court rejected these arguments. *Id.* First, the Court found that the lawsuit did not become a matter of public concern by virtue of Redland and Standard being drawn into litigation. *Id.* Second, the Court determined that while the public may be interested in international competition and industrial espionage, the speech did not concern an ongoing public debate and was not aimed at enlightening the general public. *Id.* Instead, it "'was speech solely in the individual interest of the speaker and its specific business audience.'" *Id.* (quoting *Dun & Bradstreet*, 472 U.S. 749, 762 (1985)). Third, the Court rejected the argument that the speech involved a matter of public concern to the industry:

> Even if the record proves that this dispute was of particular interest to the railroad and construction industries, it does not mean it was a matter of interest to the general public. The fact that the press release was reported primarily in industry

> publications indicates that the speech was not a matter of public concern but rather a matter of private concern of interest only to a particular industry.

*Id.* Finally, considering the context of the speech, the Court determined that the press release "was an unsolicited comment on a lawsuit between private parties" and concluded that the speech involved a private concern. *Id.*

Applying the first *Snead* factor for a public figure, the corporation's notoriety to the average individual in the relevant geographical area, the Court notes that Orix has admitted that it is a "leading provider of loan servicing and asset management/loan workout services" and that its customers include "some of the nation's largest institutional investors, portfolio owners, and loan originators." (Am. Countercl. 8). It also admits that it acted as Special Servicer for sixteen commercial mortgage backed securities, totaling over $9 billion. (*Id.*). On the other hand, the fact that Orix is large and successful does not mean that the average individual (as opposed to institutional investors, portfolio owners, and loan originators) would be familiar with the corporation. The Court finds that this factor weighs slightly in favor of finding that Orix is a private figure.

As for the second factor, the nature of the corporation's business, ORIX does not make or market a consumer product or offer services to the general public. (Orix's Br. 20). Instead it offers banking and financing services to institutions. (*Id.*). This factor weighs in favor of a finding that Orix is a private figure.

The third factor is frequency and intensity of media scrutiny. Orix claims that it does not advertise or seek publicity and occasionally issues press releases. (Orix's Br. 21). SFE claims that Orix issues press releases and is discussed in the media. (SFE's Br. 9). For this proposition, SFE cites fourteen news articles from the following publications: *Reuters*, *Commercial Mortgage Alert*, *Fitch*

*Ratings*, *Business Wire*, *Atlanta Business Chronicle*, *Lexdon Business Library*, and the *Dallas Business Journal*. (*Id.*).    As Orix points out, these articles are from publications related to the business industry. (Orix's Br. 22). That Orix is well-known in its industry does not establish public figure status. *Snead*, 998 F.2d at 1330 n.7.    SFE  argues that Orix has initiated high-profile litigation. (SFE's Br. 9).  The Court recognizes that the Court in Snead stated, "For example, even a small corporation that does not deal with consumers might attain notoriety if it engages in frequent corporate takeovers that become widely publicized." The only evidence that SFE has submitted does not show that the litigation is widely publicized, other than in industry publications. The Court also considers SFE's claims that Orix services loans held in trusts that are publicly traded and that Orix is monitored by investment ratings agencies. (SFE's Br. 10).  These factors, while relevant, are not determinative.  Based on this evidence and a consideration of all of the factors, the Court finds that SFE has not met its burden of showing that Orix is a public figure; therefore, Orix will be considered a private figure.

SFE  argues, "[T]hese statements [allegedly made by Counter-Defendants] concern complex schemes that may affect the well-being of untold numbers of borrowers and purchasers of mortgage backed securities, clearly a public issue." (SFE's Br. 10).  To the extent that SFE is arguing that the speech involves a matter of public concern, the Court rejects this argument.  Similar to *Snead*, the Predatorix website is, in part, an unsolicited comment on a lawsuit between private parties.  *See Snead*, 998 F.2d at 1330. As discussed above, SFE has only provided evidence that Orix's activities and litigation are a matter of interest within the industry.  *See Id.*  The Court concludes that SFE has not established as a matter of law that the speech involves a matter of public concern.

Because the Court has determined that Orix is a private figure, the Court need not address

SFE's arguments that there is no evidence that the statements were false or that SFE acted with actual malice. Truth is an affirmative defense in a defamation case brought by a private plaintiff, and the defendant bears the burden of proving that the alleged defamatory statements were true. TEX. JUR. PLEADING & PRAC. FORMS § 157.12 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 73.005; *Randall's Food Markets, Inc v. Johnson*, 891 S.W.2d 640 (Tex. 1995); *UTV of San Antonio, Inc. v. Ardmore, Inc.*, 82 S.W.3d 609 (Tex. App.-San Antonio 2002); *Tatum v. Liner*, 749 S.W.2d 251 (Tex. App.-San Antonio 1988)). In addition, a private plaintiff need only show negligence, not actual malice. *WFAA TV, Inc.*, 978 S.W.2d at 571 (citations omitted). Having determined that there remains a genuine issue of material fact as to Orix's libel *per se* claim, the Court **DENIES** SFE's Motion for Summary Judgment on this claim with respect to all of the Counter-Defendants except D.R. The Court now turns to Orix's business disparagement counterclaim.

## C.  Business Disparagement

Orix claims that the postings on Predatorix and Thomas Arjmandi's affidavit in litigation pending in Israel constitute business disparagement. SFE moves for summary judgment on Orix's business disparagement claim contending that ORIX has not proved any of the elements of business disparagement. (SFE's Br. 11-12). SFE claims that there is no evidence that ORIX has realized any pecuniary damages, a required element of a business disparagement claim. (*Id.* at 12). In response, ORIX explains that it is engaged in litigation related to the collection of a fraud judgment that ORIX obtained against Avram Cimerring ("Cimerring").[8] (Orix's Br. 31). ORIX claims that Counter-

---

[8]Orix claims that Cimerring, who is not a party to the lawsuit, has conspired with the Counter-Defendants to "sue ORIX and to create and use the PredatORIX website to retaliate against and punish ORIX Capital for trying to collect valid judgments against members of the conspiracy." (Orix's Br. 5).

Defendant Thomas Arjmandi has testified against Orix in this litigation against Cimerring and that SFE used materials posted on Predatorix to support Cimerring's claims against Orix. (*Id.*). Orix also states that one of the postings on the Predatorix website states that Cimerring "thanked me for the information he has learned from Predatorix.com which has helped him greatly in his cases against ORIX, Wells Fargo, and the MLMI 1999 C-1 Trust." (*Id.*). Orix contends that it has been damaged because it "has been required to expend attorneys' fees to defend itself, and the MLMI Trust, against claims brought by Cimerring in connection with the statements made by PredatORIX and the Counter-Defendants." (*Id.*).

A plaintiff must establish the following elements to prevail on a business disparagement claim: "(1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff." *Forbes v. Granade Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003). "To prove special damages, a plaintiff must provide evidence of direct, pecuniary loss attributable to the false communications of the defendants." *Johnson v. Hosp. Corp. of Am.*, 95 F.3d 383, 391 (5th Cir. 1996) (citing *Hurlburt v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 767 (Tex. 1988)). The Supreme Court of Texas has explained special damages:

> Proof of special damages is an essential part of the plaintiffs' cause of action for business disparagement. The requirement goes to the cause of action itself and requires that plaintiff "establish pecuniary loss that has been realized or liquidated as in the case of specific lost sales." Furthermore, the communication must play a substantial part in inducing others not to deal with the plaintiff with the result that special damage, in the form of loss of trade or other dealings, is established.

*Hurlburt*, 749 S.W.2d at 767 (Tex. 1988) (quoting W. KEETON, *PROSSER AND KEETON ON THE LAW OF TORTS,* § 128 at 971 (5th ed. 1984) (citing RESTATEMENT (SECOND) OF TORTS § 632 (1977))).

The Court concludes that ORIX has not established special damages. Orix has not come forward with any evidence that SFE's communications caused "special damages, in the form of loss of trade or other dealings." *Hurlburt*, 749 S.W.2d at 767. Even if attorneys fees could constitute special damages[9], an issue on which this Court expresses no opinion, SFE's actions have not caused Orix to incur litigation expenses and attorneys' fees. Indeed, Orix brought the litigation against Cimerring. (Orix's Br. 32). Thomas Arjmandi's affidavit[10] and the postings on the website may have aided Cimerring in his lawsuits, but they did not cause Orix to incur expenses in a lawsuit it initiated. As SFE correctly states, "[T]he fact that 'Cimerring 'thanked [Arjmandi] for the information he has learned from Predatorix.com *which has helped him* . . . in his cases against Orix, Wells Fargo, and the MLMI 1999 C-1 Trust' is not proof that the publication of these statements, even if false, *actually caused* the lawsuits Orix instigated." (SFE's Reply 7-8).

The cases Orix cited from other jurisdictions do not save Orix's flawed theory of special damages. In *Kollenberg*, a doctor told a patient that his severe reaction to a prescription drug overdose resulted from the pharmacist's error in filling his prescription. *Kollenberg v. Ramirez*, 339 N.W.2d 176, 177 (Mich. Ct. App. 1983). As a result of this communication, the patient sued the pharmacist. *Id.* The pharmacist subsequently sued the doctor based on his statement to the patient, and the court found that the pharmacist suffered specific damages because he had to defend the patient's lawsuit. *Id.* at 178. Similarly in *Sargent & Lundy*, the plaintiff filed suit claiming that a third

[9]The Fifth Circuit has held that under Texas law, "attorneys fees incurred in bringing a lawsuit [to stop the business disparagement], where no additional pecuniary loss has been identified, do not establish the element of special damages required to support a claim of business disparagement." *C.P. Interests, Inc. v. Cal. Pools, Inc.*, 238 F.3d 690, 696 (5th Cir. 2001).

[10]The Court has already determined that Thomas Arjmandi's affidavit was privileged for purposes of libel *per se*. (Order on Mot. to Dismiss 6). The Court need not consider whether the affidavit can support a business disparagement claim because the claim fails on other grounds.

party had filed suit against the plaintiff based on the defendant's misrepresentations. *Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1121 (6th Cir. 1990). Unlike these cases, SFE's statements did not cause Orix's litigation with Cimerring. Because Orix has failed to establish special damages, SFE's motion for summary judgment on Orix's claim for business disparagement is **GRANTED.** The Court will now consider Orix's tortious interference with contractual relationships claim.

## D.     Tortious Interference With Contractual Relationships

SFE moves for summary judgment on Orix's tortious interference with contractual relationships claim[11] because it is based on the Arjmandi affidavit and it claims that the Court "has dismissed all claims based on the Arjmandi Affidavit." (SFE's Br. 12).[12] SFE also claims that there is no evidence supporting any of the elements of tortious interference with a contract. (*Id.* at 13). Orix responds that it brought litigation against Cimerring to seek payment of a fraud judgment and that it was obligated to enforce this judgment. Orix claims, "By participating in the litigation surrounding enforcement of the Lee Hall Judgment, the Counter-Defendants are willfully interfering with ORIX Capital's obligation to enforce the judgment against Cimerring, the guarantor of the Lee Hall loan in the Israeli lawsuit." (Orix's Br. 32). Orix claims its damages are the attorneys' fees it

---

[11]SFE also moved for summary judgment on Orix's claim for tortious interference with prospective business relations. (SFE's Br. 13). As Orix pointed out, it has not pled a claim for tortious interference with prospective business relations. (Orix's Br. 32 n.117).

[12]The Court notes that SFE mischaracterizes its previous Order. The Court granted SFE's motion to dismiss Orix's libel *per se* claim insofar as it was based on Arjmandi's affidavit. However the Court specifically stated, "Counter-Defendants assert that this privilege applies to all tort actions. (Counter-Def. Mot. At 6) However, it is not clear from the Motion whether they seek dismissal of any other claims because the Arjmandi affidavit contains privileged statements. Accordingly, the Court will not address this issue with regard to the other claims at this time." (Order on Mot. to Dismiss 6). The Court need not address the issue of privilege with respect to the tortious interference with a contract claim because it finds that this claim fails on other grounds.

spent to collect on the judgment. (*Id.*). In its Reply, SFE points out that Orix has not specified how SFE has participated in the litigation or interfered with the enforcement of the judgment. (SFE's Reply 8). SFE also argues that Orix has not presented any evidence that its problems in enforcing the judgment would not be occurring absent SFE's actions. (*Id.*).

The elements of tortious interference with a contract are "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss." *Prudential Ins. Co. of Am. v. Fin. Review Servs.*, 29 S.W.3d 74, 77 (Tex. 2000) (citation omitted). The third element, proximate causation, requires "cause in fact or substantial factor and forseeability." *Video Ocean Group LLC v. Balaji Mgmt. Inc.*, 2006 WL 964565, at *9 (S.D. Tex. 2006) (citing *IHS Cedars Treatment Ctr. of DeSoto, Texas, Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2003)). "Cause-in-fact is established when the act or omission is a substantial factor in bringing about the damages and without which the damage would not have occurred." *Id.* (citing *IHS Cedars*, 143 S.W.3d at 99); *see also COC Services, Ltd. v. CompUSA, Inc.*, 150 S.W.3d 654, 674-75 (Tex. App.-Dallas 2004, *pet. denied*).

The Court finds that Orix has not presented evidence on proximate causation. While Orix does not specify how SFE participated in the litigation with Cimerring, the Court assumes, based on Orix's other arguments, that it is referring to Thomas Arjmandi's affidavit and the postings on Predatorix that allegedly helped Cimerring. Orix cannot show that it would not have incurred attorneys' fees in the lawsuit that Orix filed against Cimerring absent Arjmandi's affidavit and the Predatorix postings.[13] Accordingly, the Court **GRANTS** SFE's' motion for summary judgment on

---

[13]Orix cites *DP Solutions* for the proposition that a plaintiff can recover attorneys' fees in a tortious interference case. (Orix's Br. 32-33 (citing *DP Solutions, Inc. v. Rollins, Inc.*, 35 F.3d 421, 431 (5th Cir. 2003)).

Orix's tortious interference with contractual relationships claim. The Court now turns to SFE's motion for summary judgment on Orix's common law conspiracy counterclaim.

### E.    Common Law Conspiracy

SFE claims that summary judgment on ORIX's common law conspiracy claim is proper because (1) ORIX has no evidence to support each element of its common law conspiracy claim[14] and (2) summary judgment is proper on all of ORIX's underlying tort claims. (SFE's Br. 15). Under Texas law, a plaintiff must establish the following elements to prove a cause of action for civil conspiracy: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Apani Southwest, Inc. v. Coca-Cola Enters., Inc.*, 300 F.3d 620, 635 (5th Cir. 2002) (quoting *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983)). "The general rule is that conspiracy liability is sufficiently established by proof showing concert of action or other facts and circumstances from which the natural inference arises that the unlawful, overt acts were committed in furtherance of a common design, intention, or purpose of the alleged conspirators." *Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 581 (Tex. 1963) (citations omitted). Liability for conspiracy depends on participation in an underlying tort. *Tilton v. Marshall*, 925 S.W.2d 672, 681

---

While *DP Solutions* did hold that attorneys fees incurred in previous litigation can be recovered in a later suit for tortious interference with a contract, it limited this holding to situations "where the natural and proximate results and consequences of prior wrongful acts had been to involve a plaintiff . . . in litigation with and against third parties and other parties." *DP Solutions*, 35 F.3d at 431(quoting *Tex. Beef Cattle Co. v. Green*, 883 S.W.2d 415, 430 (Tex. App. Beaumont 1994), *rev'd on other grounds*, 921 S.W.2d 203 (Tex. 1996)). Orix's litigation with Cimerring was not the natural and proximate result of SFE's actions that occurred after Orix filed the lawsuit.

[14]SFE does not make any specific arguments regarding how Orix has failed to establish the elements of conspiracy. (SFE's Br. 15). Instead, SFE cites the elements of conspiracy and argues generally that there is no evidence of any of them. (*Id.*).

(Tex.1996).

Orix has presented sufficient evidence of each element of conspiracy to survive summary judgment as to the Counter-Defendants other than D.R. As discussed above in Part II.B.1., Orix has presented evidence that the Counter-Defendants (other than D.R.) were involved in creating and maintaining Predatorix and in creating documents for Predatorix. That Super Future Equities was formed around the same time as the Louisiana fraud judgment against Mondona Rafizadeh, that Super Future Equities purchased certificates in the same trust that held the loan on the Arlington Apartments, and that Predatorix was launched on the same day that Super Future Equities instituted this lawsuit provide further facts from which one could infer a conspiracy. (Orix's Br. 5-9; Orix App. 163, 172). This evidence creates a genuine issue of material fact as to whether the Counter-Defendants (other than D.R.) agreed to work together to form Super Future Equities[15] and establish the Predatorix website in order to create and publish defamatory material. The object was to publish defamatory material and the overt act is the publication of that material on Predatorix. As for damages as a proximate result, liability for conspiracy depends on the underlying tort. *Tilton*, 925 S.W.2d at 681. The underlying tort in this case is libel *per se*, a cause of action for which damages are presumed. *Bentley v. Bunton*, 94 S.W.3d 561, 604 (Tex. 2003) (citations omitted); *Leyendecker & Assocs. v. Wechter*, 683 S.W. 2d 369, 374 (Tex. 1985) (citation omitted). Finally, the Court has not

---

[15] The Court notes the existence of the intra-corporate conspiracy doctrine: "a corporation cannot conspire with itself, no matter how many of its agents participated in the wrongful action." *Leasehold Expense Recovery, Inc. v. Mothers Works, Inc.*, 331 F.3d 452, 463 (5th Cir. 2003). This doctrine should not apply if Orix proves that the SFE Counter-Defendants conspired to form Super Future Equities. C. *Albert Sauter Co., Inc. v. Richards S. Sauter Co., Inc.*, 368 F. Supp. 501, 510 (E.D. Penn. 1973) ( "The [intra-corporate conspiracy] rule does not apply when, as here, the defendants conspired, prior to the formation of a corporation, to form a corporation for the purpose of injuring the plaintiff.")

granted summary judgment on Orix's libel *per se* claim; therefore, it can serve as the underlying tort. Accordingly, SFE's Motion for Summary Judgment on Orix's common law conspiracy claim is **GRANTED** with respect to D.R. and **DENIED** with respect to all of the other Counter-Defendants. The Court will now move to Orix's final counterclaim—copyright infringement.

## F.    Copyright Infringement

Orix bases its copyright infringement claim on SFE's posting of an image on Predatorix that is identical to an image posted on Orix's website. (Am. Countercl. 31). The image is a copy of Orix's apparel webpage that includes three small picture images and text describing Orix's "Just Pay" apparel, offering a sale on the apparel, describing how to obtain the apparel, and describing a contest involving the apparel.[16] Above the copied image, the Predatorix website reads, "Orix is determined to recover. So determined in fact, that they are willing to spend more in the pursuit of recovery, than the recovery itself." (SFE's App. 69). SFE maintains that Orix's copyright claim is barred by the fair use doctrine.

The fair use defense is codified at 17 U.S.C. § 107 and provides that "the fair use of a copyrighted work, including such use by reproduction in copies . . ., for purposes such as criticism, comment, [or] news reporting. . ., is not an infringement of copyright." In determining whether the fair use doctrine applies, the Court considers the following statutory factors: "(1) the purpose and

---

[16] The text that SFE copied from the Orix webpage states, "ORIX Capital Markets (OCM) offers a distinctive line of 'Just Pay' attire reflecting OCM's proud determination to recover, for the benefit of the lender/bondholders, everything that is owed by all who owe it. The 'Just Pay' moniker was spawned by a Headline in <u>The Economist.</u> . . . As a special limited duration web promo for the Company Store – 'Just Pay' attire is offered with free shipping and 75% off the posted price. We reserve the right to limit quantities. This special pricing may change without notice. . . .Faxed orders must be on company letterhead and manually signed as our e-commerce initiatives have not yet tackled retailing. We will bill you for the orders and expect you to 'just pay.' . . . Photographs of 'Just Pay' attire worn in unusual or significant financial locations will be entered into a contest with winners receiving additional free merchandise and inclusion in a 2004 Just Pay

character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107. All of these factors should be explored "and the results weighed together, in light of the purposes of copyright." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994) (citations omitted). The Court will now examine each factor.

1.      *Purpose and Character of the Use*

The first factor, purpose and character of the use, focuses on the new work's transformative nature: "whether the new work merely 'supersede[s] the objects' of the original creation . . . or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Id.* at 579 (citations omitted). Whether the use has a commercial or nonprofit educational purpose, although not determinative, is an element of the first factor. *Id.* at 584. A finding of a transformative nature and a nonprofit purpose support a finding of fair use. *Id.* at 578-85.

In *Netcom*, a former scientology minster who became a critic of the Church posted the Church's works on the internet. *Religious Tech. Ctr. v. Netcom On-Line Commc'ns Services, Inc.*, 923 F. Supp. 1231, 1238 (N.D. Cal. 1995). The former minister argued that his use of the works were for criticism and to evoke discussion of Scientology. *Id.* at 1243. The plaintiffs claimed that most of the postings were verbatim copies without comment or criticism. *Id.* Applying the first factor, the court assumed that the former minister's purpose was critical but found that it was only minimally

Calendar. Please e-mail pictures to <u>Lore Smallenburg</u>." (SFE's App. 69).

transformative:

> Erlich's use is only minimally transformative since, unlike the typical critic, Erlich adds little new expression to the Church's work. Accordingly, despite Erlich's purported critical purpose, the actual character of his use does not weigh heavily in his favor because it has only a slight transformative nature.

*Id.* The Court went on to state that whenever the use is not highly transformative, the court will focus on its commercial nature. *Id.* at 1244. While the former minister did not gain financially from his postings, the plaintiffs claimed that he gained increased status and recognition. *Id.* The court recognized that *Weissman* (cited by Orix) held that "in the unusual setting of academia, a defendant can profit personally from copying despite the lack of a monetary gain." *Id.* (citing *Weissman v. Freeman*, 868 F.2d 1313 (2d Cir. 1989)). However, the court found *Weissman* inapplicable because there was no evidence that the minister took credit for the work or was profiting professionally or otherwise and determined that the use was noncommercial. *Id.* The court concluded that despite the minimally transformative nature of the use, the first factor weighed slightly in favor of finding fair use. *Id.*[17]

SFE claims that Predatorix is an informational website that discusses the practices of Orix and that it is not for economic gain. (SFE's Br. 17). It also claims that its purpose is to criticize[18] or poke

---

[17] The Court recognizes that, in the end, the Court in *Netcom* did not find fair use. *Netcom*, 923 F. Supp. at 1249. However, that case is distinguishable because the court found that the second factor weighed strongly in favor of not finding fair use as to the unpublished works, that the former minister had possibly used illicit copies of the work, and that if the use became widespread, it could potentially have an effect on the market for the plaintiff's works." *Id* .at 1245, 1249.

[18] The Court rejects SFE's claim that the use of the work was parody or satire. With regard to parody, the Supreme Court has stated, "For the purposes of copyright law, the nub of the definitions, and the heart of any parodist's claim to quote from existing material, is the use of the elements of a prior author's composition to create a new one that, at least in part, comments on that author's works." *Campbell*, 510 U.S. at 580 (citation omitted). The Court also defined satire as "a work 'in which prevalent follies or vices are assailed with ridicule' . . . or are 'attacked through irony, derision, or wit.'" *Id.* at 581 n.15(quoting 14 OXFORD ENGLISH DICTIONARY 500 (2d ed. 1989); AMERICAN HERITAGE DICTIONARY 1604 (3d ed. 1992)). SFE has

fun at the image and the motto-"Just Pay." (SFE's Reply 9). Orix counters SFE's critical purpose argument by claiming that SFE is criticizing Orix itself and not the copyrighted image. (Orix's Br. 34). Orix also maintains that SFE's verbatim copying of the image is not transformative. (Orix's Br. 35). It contends that the commercial or non-commercial nature is only part of the analysis and that SFE has profited by gaining an increase in notoriety. (Orix's Br. 35-36).

The Court agrees with SFE that the purpose of posting this image on Predatorix was likely to criticize the company. The image is accompanied by a statement about how determined Orix is to recover, which could be interpreted as a criticism of Orix's "Just Pay" motto. However, Orix's argument that the image is not transformative is sound. Like the defendant in *Netcom*, SFE has copied the original work verbatim without changing it and has added little direct criticism. Because the transformative nature is minimal, the Court focuses on the commercial/non-commercial factor which becomes more important. *Netcom*, 923 F. Supp. at 1244; *see also Campbell*, 510 U.S. at 580 ("If, on the contrary, the commentary has no critical bearing on the substance or style of the original composition, which the alleged infringer merely uses to get attention or to avoid the drudgery in working up something fresh, the claim to fairness in borrowing from another's work diminishes accordingly (if it does not vanish), and other factors, like the extent of its commerciality, loom larger."). SFE does not financially profit from Predatorix. Like the court in *Netcom*, this Court rejects Orix's argument that SFE profits by gaining notoriety[19] because SFE has not claimed credit for the image and there is no evidence that it is profiting professionally. As the court in *Netcom*

_____

copied the webpage word for word and has not created anything new or directly commented on it.

[19] In addition to *Weissman*, 868 F.2d at 1324 (distinguished above in *Netcom*) Orix also cites *World Wrestling Fed'n Entm't Inc. v. Bozell*, 142 F. Supp. 2d 514, 531 (S.D.N.Y. 2001), for the proposition that SFE profited by gaining an increase in notoriety. (Orix's Br. 36). However, in that case the defendant also sought

explained, "If mere recognition by one's peers constituted 'personal profit' to defeat a finding of a noncommercial use, courts would seldom find any criticism fair use and much valuable criticism would be discouraged." *Netcom*, 923 F. Supp. at 1244. The Court concludes that based on the lack of transformational character, the critical purpose, and the noncommercial nature of SFE's use, the first factor does not weigh in favor of either party.

Orix requests that the Court consider SFE's motives and intent in copying SFE's work when evaluating the first factor. (Orix's Br. 38). Orix is correct that the Supreme Court has stated that the propriety of the defendant's conduct is relevant to the analysis of the first factor and that fair use "presupposes 'good faith' and 'fair dealing.'" *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 562 (1985). That case involved unauthorized use of an unpublished manuscript. *Id.* at 543. The cases that have considered the defendant's bad faith tend to involve unauthorized use of an unpublished work or using a work for free when it could have been obtained for a fee. *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 479 (2d Cir. 2004) (holding that the court should consider the defendant's bad faith in obtaining unauthorized access to an unpublished manual but that this was not determinative of the first factor.); *Los Angeles News Serv. v. KCAL-TV*, 108 F.3d 1119, 1122 (9th Cir. 1997) (quoting *Harper & Row*, 471 U.S. at 562) ("'[T]he propriety of the defendant's conduct' is relevant to the character of the use at least to the extent that it may knowingly have exploited a purloined work for free that could have been obtained for a fee."). Unlike these other examples of bad faith, the Orix webpage was published on the internet and Orix has not shown that it would have charged SFE a fee to use the webpage. Instead, Orix is arguing that the way that SFE used the webpage--as opposed to the way that SFE gained access to the webpage--demonstrated bad faith.

---

financial gains. *World Wrestling Fed'n*, 142 F. Supp. 2d at 531.

The Court finds that the bad faith consideration does not apply here[20] and that, even if it does, it is not determinative. Accordingly, as stated above, the first factor is neutral.

2.      *The Nature of the Copyrighted Work*

The second factor, nature of the copyrighted work, "calls for recognition that some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied." *Campbell*, 586. A court is more likely to find fair use when the copied work is factual as opposed to fictional and creative. *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 342 F.3d 191, 200 (citing *Harper & Row*, 471 U.S. at 563). Whether or not a work has been published is a critical element of its nature, and the fact of publication favors a finding of fair use. *Harper & Row*, 471 U.S. at 564.

In *Kelly*, the protected work was a professional photographer's images of the American West. *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 815 (9th Cir. 2003). The court characterized the images as creative stating that "photographs that are meant to be viewed by the public for informative and aesthetic purposes . . .are generally creative in nature." *Id.* at 820. On the other hand, the fact that the images had already appeared on the internet before the alleged copyright infringement weighed in favor of finding fair use. *Id.* In the end, after considering the creative nature and the availability on the internet, the court found that the second factor weighed slightly in favor of not finding fair use. *Id.*

SFE claims that the image is not highly sensitive. (SFE's Br. 17). Orix, on the other hand, contends that it is a creatively designed web page. (Orix's Br. 36).

---

[20] The Court is not expressing an opinion on whether SFE acted in bad faith; it is finding that the *Harper & Row* bad faith consideration does not apply here.

The copied work consists of three small images; however, the majority of the page consists of text.[21] While the images are similar to photographs, they do not rise to the level of creativity of the photographs in *Kelly*. Furthermore, the accompanying text is more factual than creative fiction. It informs the reader of how to obtain the apparel and how to participate in the contest. The availability of the image on Orix's website strongly favors a finding of fair use. In light of the minimal creativity and the widespread availability, the Court determines that the second factor weighs in favor of finding fair use.

### 3. *Amount and Substantiality*

The third factor "asks whether 'the amount and substantiality of the portion used in relation to the copyrighted work as a whole' . . . are reasonable in relation to the purpose of the copying." *Campbell*, 510 U.S. at 586 (quoting § 107(3)). "[T]he extent of permissible copying varies with the purpose and character of the use"; therefore, this inquiry requires the Court to return to the first factor. *Id.* at 586-87. The Court should also consider the quality and importance of the materials used. *Id.* at 587.

The parties disagree about what constitutes the work as a whole. SFE contends that the whole work is the multi-page website and that it only copied one page. Orix claims that the whole work is the apparel webpage on the Orix website and that SFE copied the entire work. In *Free Republic*, the Court held that the whole work was a single article as opposed to the entire newspaper. *Los Angeles Time v. Free Republic*, 1999 WL 33644483, at * 19 (C.D. Cal. 1999). The Court analogized other cases involving an article from a journal; a one-page parody from a 154 page

---

[21] Each picture image is approximately .75 inches by .75 inches. The text block is approximately 2 inches by 5 inches.

magazine; and lectures, policy statements, and course packets that were collected in larger volumes. *Id.* (citing *Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 925-26 (2d Cir. 1994); *Hustler Magazine Inc. v. Moral Majority Inc.*, 796 F.2d 1148, 1155 (9th Cir. 1986); *Netcom,* 923 F. Supp. at 1247)).

Based on *Free Republic*, the Court concludes that the whole of the copyrighted work is the apparel webpage, not the entire website. Therefore, SFE has copied the entire work. Copying of the entire work was not justified here where the Court was not persuaded that SFE's posting was transformative. This factor weighs against finding fair use.[22]

### 4. *Effect on Potential Market*

Finally, the fourth factor, the effect of the use on the potential market for or value of the copyrighted work, requires the Court to consider the extent of the market harm caused by the alleged infringement and "'whether unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in a substantially adverse impact on the potential market' for the original." *Campbell*, 510 U.S. at 590 (citations omitted).

The Supreme Court has discussed the importance of this factor in the context of speech that is not for a profit:

> The purpose of copyright is to create incentives for creative effort. Even copying for noncommercial purposes may impair the copyright holder's ability to obtain the rewards that Congress intended him to have. But a use that has no demonstrable effect upon the potential market for, or the value of, the copyrighted work need not

---

[22] The Court recognizes Orix's argument that many courts have not found fair use when verbatim copying of the entire work is involved. However, the Court finds that this is not a hard and fast rule: "[E]ven copying of entire works should not weigh against a fair use finding where the new use serves a different function from the original, and the original work can be viewed by anyone free of charge." *Field v. Google Inc.*, 412 F. Supp. 2d 1106, 1120 (D. Nev. 2006) (citing *Sony Corp of Am v. Universal City Studios*, 464 U.S. 417, 449-50 (1984)). The Court finds that this factor is not fatal to a finding of fair use and will weigh it with the other factors.

be prohibited in order to protect the author's incentive to create. The prohibition of such noncommercial uses would merely inhibit access to ideas without any countervailing benefit.

*Sony Corp of Am v. Universal City Studios*, 464 U.S. 417, 450-451 (1984).

SFE argues that even if the copyrighted work--the apparel webpage-- has value, it is difficult to imagine how Predatorix's use affects the value of or market for the work. (SFE's Br. 17). SFE points out that Orix enthusiasts would still have to go to Orix to obtain any of the apparel and the posting may even give the apparel exposure resulting in more sales for Orix. (SFE's Br. 18). Orix does not make any argument regarding the potential value of or market for the work but instead states that SFE has admitted that the taking of the work has affected its market. (Orix's Br. 37). The Court could not find and Orix does not offer any support for this contention. Orix states that SFE has the burden of proof and must produce evidence regarding the relevant markets. (Orix's Br. 37-38 (citing *Campbell*, 510 U.S. at 590). *Campbell*, in the context of *commercial* use, has stated that "Since fair use is an affirmative defense, its proponent would have difficulty carrying the burden of demonstrating fair use without favorable evidence about relevant markets." *Campbell*, 510 U.S. at 590. However, Orix ignores that it, not SFE, has the burden of proof on market effect in the context of *noncommercial* use. *Sony,* 464 U.S. at 451 ("A challenge to a noncommercial use of a copyrighted work requires proof either that the particular use is harmful, or that if it should become widespread, it would adversely affect the potential market for the copyrighted work . . . .What is necessary is a showing by a preponderance of the evidence that *some* meaningful likelihood of future harm exists. If the intended use is for commercial gain, that likelihood may be presumed. But if it is for a noncommercial purpose,

the likelihood must be demonstrated.")[23]; *Veeck v. S. Bldg. Code Cong. Int'l Inc.*, 241 F.3d 398, 410 (5th Cir. 2001) (quoting *Sony*, 464 U.S. at 451) ("When. . . the use of a copyrighted work is noncommercial, defeating a fair use defense requires 'proof either that the particular use is harmful, or that if it should become widespread, it would adversely affect the potential market for the copyrighted work.'"); *Higgins v. Detroit Educ. Television Found.*, 4 F. Supp. 2d 701, 709 n.8 (E.D. Mich. 1998) "[B]ecause the challenged use is of a 'non-commercial' nature, the burden of proof as to market effect rests with the copyright holder.") (citing *Princeton Univ. Press v. Mich. Document Servs.*, 99 F.3d 1381, 1385 (6th Cir. 1996) (citing *Sony*, 464 U.S. at 451)). Orix has not provided any evidence that the use is harmful or would affect the market.

The Court concludes that the posting on Predatorix has no effect on the market for or value of the copyrighted material.[24] Accordingly, this factor weighs strongly in favor of finding fair use.

Considering all of the factors, the first factor is neutral, the second factor weighs in favor of fair use, the third factor weighs against fair use, and the fourth factor weighs strongly in favor of fair use. The Court recognizes the importance of considering the lack of the transformative nature of SFE's use. However, the Court finds that in light of the non-commercial nature of the use, the availability of the webpage on the internet, and the lack of effect on the market, SFE is entitled to the fair use defense. Accordingly, the Court **GRANTS** SFE's Motion for Summary Judgment on

---

[23] The Court in *Campbell* questioned Sony's presumption of market harm in the commercial context but not the requirement of proof of harm in the noncommercial context. *Campbell*, 510 U.S. at 591.

[24] That Predatorix may make Orix unpopular is not the type of market effect that should be considered under this factor. As the Court in *Campbell* stated, "[T]he role of the courts is to distinguish between '[b]iting criticism [that merely] suppresses demand [and] copyright infringement [, which] usurps it." *Campbell*, 510 U.S. at 592 (quoting *Fisher v. Dees*, 794 F.2d 432, 438 (9th Cir. 1986)).

Orix's copyright infringement claim.[25]  Having resolved SFE's motion for summary judgment, the Court will now address Orix's objections to SFE's summary judgment evidence.

### III.  Orix's Objections to SFE Counter-Defendants' Summary Judgment Evidence

Orix has objected to and moved to strike Exhibits B, F, H, I, and J of Appendix in Support of Counter-Defendants' Motion for Summary Judgment.  For the reasons that follow, the Court finds that this evidence does not affect its ruling on the Motion for Summary Judgment.  Accordingly, Orix's Motion to Strike is **DENIED as MOOT.**

SFE  cited Appendix B, John Dinan's Deposition, to support the proposition that with respect to Orix's business disparagement claims, "the President of ORIX USA Corporation has admitted that ORIX has not suffered any damages."  (SFE's Br. 12).  SFE  also cited this deposition in its discussion of Orix's tortious interference with contractual relationships claim, stating, "Further, Orix has conceded that it cannot demonstrate that it suffered any actual damage or injury proximately caused by Counter-Defendants' alleged interference."  (SFE's Br. 13).   Because the Court finds that summary judgment is appropriate on Orix's business disparagement and tortious interference with contractual relationships claims even without this evidence, it need not determine whether the deposition is admissible.

SFE  never cited Exhibit F in its brief; therefore, the Court did not consider this evidence.

---

[25] Although the Court has granted summary judgment on all of the federal claims in this case, this Court chooses to retain jurisdiction over the remaining state law claims.  *See Burns-Toole v. Byrne*, 11 F.3d 1270, 1276 (5th Cir. 1994) (citing *Noble v. White*, 996 F.2d 797, 799 (5th Cir.. 1993) (per curiam) ("When all federal claims are dismissed-i.e., those over which the district court had original jurisdiction-the district court enjoys wide discretion in determining whether  to retain jurisdiction over the remaining state law claims.")). Retaining jurisdiction over this case will accomplish judicial economy, convenience, and fairness to the parties because this Court is very familiar with this case, which has been pending for more than two years. *See Russell v. Dillard Dep't Store*, 1995 WL 330643, at * 4 (E.D. Tex. 1995) (citation omitted) (considering, among other factors, the length of time the case has been pending before the federal court and the proximity of the trial

SFE cited Appendices H and I to support its claim that Orix is a public figure. The Court need not consider Orix's objections because it finds that even with this evidence, SFE has not met its burden of establishing that Orix is a public figure.

Finally, Orix objects to Appendix J, paragraphs 5 and 6 of the Declaration of Cyrus Rafizadeh. SFE cited these paragraphs to support the claim that no Counter-Defendant other than Cyrus had actually published any statement of fact on Predatorix.com. (SFE's Br. 7-8). The Court found in favor of Orix with respect to this claim regarding most of the other Counter-Defendants even with this evidence. SFE also cited these paragraphs in support of its claim that there was no evidence of actual malice. (SFE's Br. 11). The Court did not consider this argument because it found that Orix was a private figure who was not required to prove actual malice.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** SFE's Motion for Summary Judgment on Orix's counterclaims for business disparagement, tortious interference with contractual relationships, and copyright infringement. The Court **GRANTS** SFE's Motion for Summary Judgment with respect to Orix's libel *per* se claim and common law conspiracy claim against D.R. but **DENIES** the Motion with respect to libel *per se* and common law conspiracy against all other SFE Counter-Defendants. The Court **DENIES as Moot** Orix's Motion to Strike Counter-Defendant's Summary Judgment Evidence.

date.).

SO ORDERED

SIGNED March 17th , 2008

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE