UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ORIX CAPITAL MARKETS, LLC, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:06-CV-0271-B |
| | § | |
| SUPER FUTURE EQUITIES, INC., et al., | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM ORDER

Before the Court are three motions filed by Plaintiff ORIX Capital Markets, LLC (hereinafter, "ORIX"). The motions: ORIX's Motion for Court to Decline to Exercise Supplemental Jurisdiction (doc. 640), ORIX's Motion for Leave to Amend Pleadings (doc. 641), and ORIX's Motion for Leave to Amend to Include "DOJ Powerpoint" as Libel *Per Se* (doc. 638) are addressed in turn below. For the reasons that follow, the Court **DENIES** ORIX's Motion to Decline to Exercise Supplemental Jurisdiction (doc. 640). The Court further **DENIES** ORIX's Motion for Leave to Amend Pleadings (doc. 641), but **GRANTS** ORIX's limited Motion for Leave to Amend to Include "DOJ Powerpoint" as Libel *Per Se* (doc. 638).

### I. BACKGROUND

The parties' tumultuous relationship began in 2001, arising from the world of Commercial Mortgage Backed Securities (hereinafter, "CMBS").[1] In CMBS transactions, mortgage loans are

---

[1] The Court comprehensively discussed the intricacies of CMBS transactions in its Order on Defendants' Motions for Summary Judgment (doc. 498). (*See* Dec. 14, 2007 Mem. Order.)

funded and subsequently sold to a special purpose, bankruptcy-remote entity, commonly referred to as a "trust." The trust houses a diversified pool of loans. The purchase of these loans is funded by the proceeds from the issuance of certificates that are purchased by investors. A Pooling and Servicing Agreement sets out the procedures for administering the loans, including, *inter alia*, the distribution of responsibility for trust matters among a Master and Special Servicer.

Generally, the Master Servicer's duties include collecting loan payments, providing performance reports to investors, and enforcing loan documents for untroubled loans. However, when a loan defaults, the Master Servicer will transfer the loan to the Special Servicer. The Special Servicer is then responsible for managing the defaulting loan, and if necessary, initiating foreclosure proceedings.

Defendant Super Future Equities, Inc. (hereinafter, "SFE"), an investor in two CMBS trusts in which ORIX served as both Master and Special Servicer, filed this action on February 13, 2006. (Compl.) SFE sued ORIX and others, claiming breach of fiduciary duty, breach of contract, and RICO violations. (*Id.* at ¶¶ 137-70.) After a series of amendments to its pleading, SFE added counts of negligence and gross negligence. (Second Am. Compl. ¶¶ 221-27.) On December 14, 2007, this Court dismissed all of SFE's claims on ORIX's motion for summary judgment. (Dec. 14, 2007 Mem. Order.)

On April 24, 2006, ORIX filed a counterclaim against SFE, Schumann Rafizadeh (hereinafer, "Schumann"), Houman Thomas Arjmandi (hereinafter, "Thomas"), Keon Michael Arjmandi (hereinafter, "Keon"), and Cyrus Rafizadeh (hereinafter, "Cyrus," and together with SFE, Schumann,

Thomas, and Keon, "Defendants").[2] (Countercl. ¶¶ 4-8.) The crux of ORIX' counterclaim is that SFE filed this case as part of an ongoing campaign to defame and otherwise conspire against ORIX. (*Id.* at ¶¶ 10-22.)

According to ORIX, its troubles with SFE began when the entities entered into their CMBS trust agreement in 2001. (Am. Countercl. ¶¶ 11, 17.) Cyrus II Partnership - an entity owned by Schumann and his wife Mondona Rafizadeh, (*id.* at ¶¶ 11, 15) - executed a promissory note on a property known as the Arlington Apartments, (*id.* at ¶ 11). The loan was held in a CMBS trust where ORIX functioned as both Master and Special Servicer. (*Id.* at ¶ 16.) Cyrus II defaulted on its loan obligations. (*Id.* at ¶ 17.) Consequently, ORIX brought suit in Louisiana to foreclose on the Arlington Apartments. (*Id.* at ¶ 18.) Ultimately, ORIX obtained a fraud judgment in excess of ten million dollars against Cyrus II, Mondona Rafizadeh, and Bahar Development, Inc., Cyrus II's general partner. (*Id.* at ¶ 19.)

ORIX maintains that SFE conspired to defame ORIX in retaliation for the judgment awarded in the Louisiana litigation. (*Id.* at ¶¶ 28-42.) As part of their scheme, SFE created the website www.predatorix.com (hereinafter, "Predatorix"). (*Id.* at ¶ 36.) ORIX charges that SFE used Predatorix to publish defamatory statements about ORIX. (*Id.* at ¶ 46.) Specifically, ORIX's amended counterclaim identifies seven statements found on Predatorix.[3] (*Id.* at ¶¶ 51-

---

[2]ORIX also filed its counterclaim against Darius Rafizadeh; however, there are no longer any surviving claims against this individual. (*See* March 17, 2008 Mem. Ord.)

[3]In its amended counterclaim, ORIX lists the following allegedly defamatory statements.

[Statement #1:] "ORIX is determined to recover. So determined in fact, that they are willing to spend more in the pursuit of recovery, than the recovery itself .... ORIX spent over $22M to recover $19.4M, smooth. Very smooth."

....

[Statement #2:] "Wells Fargo and ORIX Magic Tricks."

....

- "This magic tricks [sic] works [sic] by taking REMIC Trusts [sic] money by cooking up the books to make it look like the Trusts [sic] owes 'P&I Advances' to Servicers and Trustee";

- "In effect, every time Orix [sic] takes money out of one pocket of Orix [sic] and puts it in the other pocket of Orix [sic], the Trust is obligated to refill the empty pocket plus interests [sic] for Orix [sic]. With this tricks [sic] Orix [sic] can indefinitely siphon all the money it wants from the Trust. Orix [sic] pays out once, collects twice, thus doubling its money. It is like smoke and mirrors trick!";

- "Now, the application of special effects can significantly improve and multiply the disappeared funds. For example, taking the litigation expenses from one lawsuit and applying it again in another lawsuit! This improvement to this trick can actually make a lot of funds disappear from Trusts and Borrower/Guarantor's equity, tax-free, compliments of REMIC regulations diversions! This is another smoke and mirror trick for complex disappearing act"; and

- "These magic tricks works [sic] by manipulating the distribution reports and 1066 Tax return form and the SEC disclosure violations. (Disabling codes and regulations intended to prevent such illegal activities.)".

....

[Statement #3: A] sixteen second clip of John Dinan's video deposition testimony. The video clip ... omits any context ... and misleads the viewer.

....

[Statement #4:] This website is dedicated to all the victims of Wells Fargo & ORIX's predatory lending and discriminatory practices including:

1) All borrowers and guarantors who lost assets, were stripped of equity, incurred physical and emotional injuries, or lost their lives upon loss of their life-time earnings.

2) All investors who have lost their pension funds and retirement investments in CMBS bonds (certificateholders).

3) All tenants of the seized commercial and residential properties who suffered neglect and

89.)

On July 11, 2006, ORIX filed an application for injunctive relief against SFE, seeking to enjoin SFE from posting any new statements on the Predatorix website. (Application for Prelim. Inj.) Briefing and a hearing followed. At the hearing, a key piece of ORIX's proof against SFE was a statement SFE had recently posted on Predatorix known as the "DOJ Powerpoint." (Mot. for Recons. or Mot. for Leave to Amend to Include DOJ Powerpoint.) The DOJ Powerpoint is a 137 page slideshow. (*Id.*) On the first slide, there is an image of the seal of the United States Department of Justice, along with the phrase "Orix Corporation Report to U.S. DOJ[,] RICO Violations." (*Id.*) ORIX questioned witnesses on the truth of the statements in the DOJ Powerpoint, and whether it was truly a document issued by the Department of Justice. Ultimately, for reasons unrelated to the DOJ Powerpoint, the Court denied ORIX's application for a preliminary

---

> mismanagement at the hands of Receiver/Keepers of the seized properties due to health and safety violations, fires, shootings, theft or drowning.
>
> Especially David Pena of Empire Center Dallas, who died of a heart attack after his property was seized and Justin & Daren Ruffin, twin brothers that drowned in a seized apartment's pool.
>
> ....
>
> [Statement #5:] "Today I have added a new Pick-of-the-Week as well as a new Lie by ORIX, both are very interesting .... ORIX flat out lied" [and accompanying documentation.]
>
> ....
>
> [Statement #6:] "I have also added an [sic] scan of a USA Today article where Fannie Mae was fined $400M for similar practices of Wells Fargo and Orix [sic]" [and accompanying article.]
>
> [Statement #7: New page entitled] "ORIX v. Lasalle and Nomura Securities." ... "Below are documents relating to the suit which was won by Nomura Securites."

(Am. Countercl. ¶¶ 51-89.)

injunction. (Oct. 30, 2006 Mem. Order Den. Counter-Pls.' Application for Prelim. Inj.)

After the preliminary injunction hearing, the case made several stops and starts toward trial. After a series of continuances, trial was set for the week of September 15, 2008. As the trial date approached, the parties, who by this time had accumulated well over 600 docket entries in the case, had a heated dispute over the ORIX' proposed evidence for trial. Specifically, in the proposed pretrial order, ORIX, for the first time, listed a total of forty allegedly defamatory statements it contended were at issue for trial. (Joint Proposed Pretrial Order.) SFE strongly opposed adding these new allegations to the case and responded with a motion *in limine* to preclude ORIX from presenting evidence of any statements other than the seven originally plead in ORIX's amended counterclaim. (Def.'s Mot. *in Limine*.)

The Court held a pretrial conference with the parties' counsel on September 12, 2008. At the pretrial conference, the Court granted SFE's motion *in limine* and barred ORIX from introducing the newly designated statements as defamation. ORIX then requested the Court to at least permit admissibility of the DOJ Powerpoint, asserting that Defendants had adequate notice of ORIX's complaints regarding this piece of evidence, as it was the primary piece of evidence at the preliminary injunction hearing. The Court denied admission of the DOJ Powerpoint, but informed the parties that the additional statements, including the DOJ Powerpoint, may be admitted at trial, not as part of ORIX' cause of action for defamation, but in support of its proof of the seven properly plead statements.

The day after the pretrial conference, Hurricane Ike hit the city of Houston, Texas. Schumann, Thomas, and Cyrus, residents of the City of Houston, were consequently unable to confer with their counsel. The Court accordingly granted a final continuance, re-setting trial for the

week of January 26, 2009.

Meanwhile, ORIX, still desiring a trial on each allegedly defamatory statement on Predatorix, filed suit in Texas state court on all statements this Court excluded. ORIX then filed the motions *sub judice*. The motions are ripe, and the Court now moves to the merits of its decision.

## II. ANALYSIS

In its motions, ORIX seeks alternative forms of relief. First and foremost, ORIX asks the Court to abstain from exercising its jurisdiction over ORIX's claims so that ORIX may join the claims to its action filed in the Texas courts. Alternatively, should the Court decide to maintain jurisdiction over the action, ORIX seeks leave to amend its amended counterclaim in two respects. ORIX leads by seeking to include each newly identified statement. Should the Court deny ORIX leave for such a broad amendment, ORIX asks for leave to include only the DOJ Powerpoint. The Court moves first to ORIX's request to refrain entirely from exercising jurisdiction.

A.  *Supplemental Jurisdiction*

ORIX's claims are pending before the Court on the basis of this Court's supplemental jurisdiction. *See* 28 U.S.C. § 1367(a). Federal courts are vested with supplemental jurisdiction when, having original jurisdiction over a federal claim, additional state claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *Id.* In the present action, the Court has dismissed all federal claims. ORIX, therefore, requests this Court to decline to exercise its supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3). *See id.* (permitting federal courts to decline to exercise jurisdiction when "the district court has dismissed all claims over which it has original jurisdiction").

"District courts enjoy wide discretion in determining whether to retain supplemental jurisdiction over a state claim once all federal claims are dismissed." *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993); *see also Burns-Toole v. Byrne*, 11 F.3d 1270, 1276 (5th Cir. 1994) (same). In determining whether to maintain jurisdiction after the dismissal of all federal claims, "courts should exercise their discretion in a way that best serves the principles of economy, convenience, fairness, and comity." *Doddy v. Oxy U.S.A., Inc.*, 101 F.3d 448, 456 (5th Cir. 1996) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1987)); *Newport Ltd. v. Sears, Roebuck & Co.*, 941 F.2d 302, 307 (5th Cir. 1991). In weighing these factors, courts are often influenced by "the length of time the case has been pending before the federal court, the proximity of the trial date, [and] the predominance of issues of federal, rather than local, concern." *See Russell v. Dillard Dep't Store*, 1995 WL 330643, at *4 (E.D.Tex. July 20, 1995).

The factors of judicial economy, convenience, and fairness weigh heavily in the Court's determination of this matter. The Court is quite familiar with the facts of this case, as it has been pending in this forum for nearly three years and amassed 650 docket entries. The Court and the parties have spent significant resources to move this cause to trial. To date, the parties have completed discovery, and the Court has already ruled on the parties' motions for summary judgment. Indeed, but for Hurricane Ike, the action would have already progressed through a full trial on the merits. "Generally, the longer a case has been pending in federal court, the more likely a federal court will exercise supplemental jurisdiction, as it enhances the concept of fairness." *Russell*, 1995 WL 330643, at *4. In light of the extensive and costly proceedings managed by this Court thus far, it would be simultaneously unfair and inconvenient to dismiss the pending state law claims. *Cf. Doddy*, 101 F.3d at 456 (affirming a trial court's exercise of supplemental jurisdiction where the cause

was in the forum for over two years, extensive discovery had been prepared, and summary judgment motions were pending).

Moreover, maintaining jurisdiction over the pending claims will conserve precious judicial resources. If ORIX were to join the seven original statements from this action to its state action, the state forum would be forced to duplicate all of this Court's prior efforts. Conversely, if this Court maintains jurisdiction, *res judicata* will minimize the duplication of effort at the state level.

The final factor for the Court's consideration is the concept of comity. This factor also weighs in favor of exercising jurisdiction, as there are no novel issues of state law to be decided in this case. The factors of fairness, convenience, judicial economy, and comity, therefore, all counsel in favor of retaining jurisdiction. Accordingly, the Court, in its discretion, **DENIES** ORIX's Motion to Decline to Exercise Supplemental Jurisdiction (doc. 640), and maintains its jurisdiction over the claims presently pending before the Court. The Court next considers ORIX's motions seeking leave to amend its pleadings.

B.     *Leave to Amend*

The Federal Rules of Civil Procedure instruct that leave to amend pleadings should be freely given "when justice so requires." FED. R. CIV. P. 15(a)(2). "Leave to amend, however, is by no means automatic." *Little v. Liquid Air Corp.*, 952 F.2d 841, 845-46 (5th Cir. 1992). Courts may deny leave to amend for a substantial reason, such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, and undue prejudice to the opposing party." *Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594, 598 (5th Cir. 1981) (citing *Foman v. Davis*, 374 U.S. 178, 182 (1962)). Courts should also consider judicial economy, and the most expeditious means to resolve the case on its merits. *Dussouy*, 660

F.2d at 598; *see also Little*, 952 F.2d at 846 ("While leave to amend must be freely given, that generous standard is tempered by the necessary power of a district court to manage a case."). The final decision to grant or deny leave "lies within the sound discretion of the district court." *Little*, 952 F.2d at 846. The Court thus applies these considerations first to ORIX's motion for leave to amend to add each of the newly identified allegedly defamatory statements, and subsequently analyzes ORIX's more limited motion to amend solely for the inclusion of the DOJ Powerpoint.

   *i.*  *Amendment to Include All New Allegations of Defamation*

In seeking leave to amend its pleading, ORIX hopes to add thirty-four additional allegedly defamatory statements to this case. At the forefront of the Court's consideration is the potential for undue prejudice to Defendants should the Court grant ORIX's motion for leave to amend. For over two years, Defendants have prepared to defend this case on the basis of seven statements listed within ORIX's counterclaim. From Defendants' vantage point, the addition of thirty-four additional statements would radically alter the nature of trial. Instead of defending themselves against seven statements, they would have to defend against forty (those originally plead plus the thirty-four newly plead). A scenario such as this is but one of the reasons why "eve-of trial amendment[s] are ordinarily disfavored." *Prudhomme v. Tenneco Oil Co.*, 955 F.2d 390, 393 (5th Cir. 1992) (citing *Nance v. Gulf Oil Corp.*, 817 F.2d 1176, 1180 (5th Cir. 1987)). Given the proximity of trial in this matter, Defendants would be unduly prejudiced if the Court were to grant ORIX's motion for leave to amend.

Having found a substantial reason to deny amendment, the Court must consider whether ORIX will be prejudiced should the motion be denied. *Dussouy*, 660 F.2d at 598. As an initial matter, ORIX is still free to litigate the additional statements in a separate action - an avenue ORIX

has already taken advantage of by filing its state lawsuit. Moreover, the Court's ruling on Defendants' motion *in limine* does not bar the additional statements for collateral matters such as intent. ORIX thus suffers no prejudice if leave is denied. In view of the significant prejudice Defendants will suffer should the Court grant ORIX's motion, and the lack of prejudice in the contrary, the Court is of the opinion that ORIX's Motion for Leave to Amend Pleadings (doc. 641) should be and hereby is **DENIED**.

This conclusion is simply reaffirmed in light of the Court's broad authority to manage cases before it. *See Little*, 952 F.2d at 846. The Federal Rules of Civil Procedure mandate that they be construed to achieve the "just, speedy, and inexpensive determination of every action and proceeding." FED. R. CIV. P. 1. The Court's ruling on ORIX's Motion for Leave to Amend satisfies each of these interpretive purposes. The Court, however, must now determine whether ORIX's limited Motion for Leave to Include "DOJ Powerpoint" as Libel *Per Se* falls upon the same fate.

ii. *Amendment to Include DOJ Powerpoint*

ORIX's final request for relief is an alternative to its Motion for Leave to Amend Pleadings. Because ORIX is not able to amend to include all new statements published on Predatorix, ORIX asks the Court for leave to amend solely to include the DOJ Powerpoint. Once again, because leave to amend should be freely given "when justice so requires," FED. R. CIV. P. 15(a)(2), the Court may only deny ORIX's limited motion for leave to amend if there is a substantial reason for doing so, *Dussouy*, 660 F.2d at 598.

The concern for undue prejudice to Defendants vanishes with ORIX's narrowed request for relief. Whereas Defendants would be unduly prejudiced if they had to defend against thirty-four statements they had scant notice of, the addition of one statement diminishes that prejudice.

Moreover, any prejudice to Defendants all but disappears when one takes account of the ample notice ORIX provided by complaining of the DOJ Powerpoint early on. ORIX questioned Thomas and Cyrus about the DOJ Powerpoint in their depositions, and the DOJ Powerpoint was the premier piece of evidence at the preliminary injunction hearing. Because the Defendants were duly given notice that ORIX was claiming the DOJ Powerpoint was defamation, they are not prejudiced by amendment to the pleadings. The Court, therefore, **GRANTS** ORIX's Motion for Leave to Amend to Include "DOJ Powerpoint" as Libel *Per Se* (doc. 638).

### III. CONCLUSION

For the foregoing reasons, the Court **DENIES** ORIX's Motion to Decline to Exercise Supplemental Jurisdiction (doc. 640), **DENIES** ORIX's Motion for Leave to Amend Pleadings (doc. 641), and **GRANTS** ORIX's Motion for Leave to Amend to Include "DOJ Powerpoint" as Libel *Per Se* (doc. 638). Accordingly, ORIX is directed to file its amended pleading by **November 10, 2008**.

SO ORDERED

Dated: November 6, 2008

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE